60

Knute SWANSON, on behalf of Peoria Service Company, and on behalf of all shareholders of Peoria Service Company similarly situated, Plaintiff,

v.

AMERICAN CONSUMER INDUSTRIES, INC., United States Cold Storage Corporation and Peoria Service Company, Defendants.

No. P–2891.

United States District Court
S. D. Illinois, N. D.

Aug. 20, 1968.

Richard Orlikoff, Arthur T. Susman, Chicago, Ill., Thomas V. Cassidy, Peoria, Ill., for plaintiff.

Frank O. Wetmore and Frank B. Gilmer, Chicago, Ill., Eugene L. White, Peoria, Ill., for defendants.

## DECISION AND ORDER

ROBERT D. MORGAN, District Judge.

■ The complaint in this action was filed June 21, 1965[1] in the District Court for the Northern District of Illinois, seeking a permanent injunction against the carrying out of a plan of corporate reorganization between American Consumer Industries, Inc. (herein ACI), and Peoria Service Company, a subsidiary (herein Peoria), recision of the agreement involved and damages, expenses and attorneys' fees, on the theory that the plan as conceived, and then partially carried out, violated Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10(b) (5) of the rules promulgated thereunder by the Securities and Exchange Commission. It is clear and not disputed that ACI owned 90% of the outstanding stock of United States Cold Storage Corporation (herein U.S. Cold), which in turn owned 87% of Peoria at all times here material, and it. is contended that this dominant position was used in violation of law and fiduciary duty to the detriment of Peoria and its minority shareholders. Issue was joined by Answer filed August 20, 1965, and, after some discovery on both sides and a preliminary pre-trial conference, the case was transferred to this court on October 25, 1966 in the interest of justice. This court, on December 21, 1967, allowed defendants' motion to dismiss the class action aspect of the complaint on the ground that plaintiff could not be "similarly situated" with any more than 40 persons owning some 7% of the shares involved, which was not a group so numerous that joinder of all would be impractical. (See Rule 23(a) (1) F.R.Civ. P.)

On January 31, 1968, this court allowed filing of motion by defendants to dismiss derivative action, which has been extensively argued and briefed by both sides. Plaintiff stated in his brief that allowance of the pending motion "would in effect dispose of the entire action," and "Plaintiff does not allege an individual action." Also, extensive answers to interrogatories and affidavits of facts have been filed herein.

On May 6, 1968, this court issued an Interlocutory Order stating the conclusion that, on the state of the record before it under Rule 12(b) F.R.C.P., the pending motion must be treated as one for summary judgment and be disposed of as provided in Rule 56 F.R.C.P. after all parties have been given reasonable opportunity to present all material made pertinent to such a motion by said Rule 56. A period of thirty days was allowed for filing of any additional sworn, factual material, argument and citation of authorities, and any request for further oral argument.

Thereafter, defendants filed a further quite comprehensive affidavit of one Earle D. Barton, and a memorandum in support of motion for summary judgment. Plaintiff filed transcript of a state court deposition of the chief executive officer of ACI, Peoria and U.S. Cold, and a memorandum in answer to that of defendants, together with a motion for oral argument;[2] but no affida-

1. This action was preceded by Case No. 65 CH 1656 in the Circuit Court of Cook County, Illinois, which sought to enjoin the plan here involved. What happened to that action is not clear in this record, but some of the material "discovered" in that case has been filed or referred to in discovery proceedings here.

2. At the time set therefor, plaintiff concluded that argument would be "futile," in view of the Court's apparent conclusions, and asked leave to withdraw its request for argument. This was allowed and it was formally done by motion a few days later, to which defendants consented in writing. In connection with recitations in these documents, it may be observed that the Court's tentative conclusions had been communicated informally to counsel for both sides prior to the Interlocutory Order of May 6, 1968.

vit disputing any factual material otherwise before the Court.

## UNDISPUTED FACTS

In the opinion of this court, the controlling facts are undisputed in the record through allegations of the complaint admitted in the Answer; failure of denial on requests for admission; affidavits; and sworn answers to interrogatories and to questions on deposition which are not controverted. Those facts are:

1. Defendant ACI is a large, publicly held and diversified business enterprise whose shares are listed and traded on the New York Stock Exchange. At least since 1960 it has been directly engaged in the ice manufacturing business at several plants; in the operation of cold storage warehouses; in the processing and sale of eggs; and in the sale of lumber, building materials, household appliances and furnishings, motor oil and gasoline station supplies, etc.

2. U.S. Cold at all times here material was owned about 90% by ACI and was engaged primarily in the operation of cold storage warehouses in a number of different cities, not including Peoria, Illinois.

3. Peoria was an Illinois corporation engaged for a good many years in ice manufacturing and sale and in the operation of two relatively old cold storage warehouse facilities at Peoria, Illinois. It had some 81,500 shares outstanding, over 50% of which were held by a single owner in 1961. It had paid no dividends, at least in recent years.

4.. In 1961 ACI acquired the controlling interest in Peoria, through an exchange of shares by agreement with the owner of over 50% of the shares, on the basis of one share of ACI stock for each nine shares of Peoria stock. On the then published market value of ACI shares this was computed at slightly less than $3.00 per share for Peoria shares (for the controlling interest). As part of that agreement ACI also made an offer to all other Peoria share holders to buy their shares at $3.00 per share. As a result of these combined transactions, ACI acquired 80% to 87% of the outstanding Peoria shares in a short time in 1961. It, or U.S. Cold, also picked up a few more Peoria shares thereafter and never paid more than $3.00 per share.

5. At all times here material after 1961, ACI was able to, and did, in fact, elect at least a majority of the Boards of Directors of both U.S. Cold and Peoria, and Mr. Joseph S. Robinson was chief executive officer of all three companies.

6. In order to effect operating economies for Peoria, to streamline management of like businesses, and to provide Peoria with engineering and other overhead services of U.S. Cold (and possibly for other reasons which do not appear), in 1962 ACI sold its shares in Peoria to U.S. Cold for the same price it had paid in acquiring them the preceding year.

7. Between 1961 and the end of 1964 numerous efforts were made by officers of Peoria, through about ten different financial institutions and individuals, to obtain financing for Peoria to obtain for operation, on an ownership or lease basis, a new cold storage warehouse facility in the vicinity of Peoria, Illinois, without success. The uniform lenders' requirement, that performance by Peoria be guaranteed by either U.S. Cold or ACI, was not acceptable to either. They expected Peoria to stand on its own feet.

8. On or about March 11, 1965, an agreement and plan of reorganization was developed providing for conveyance to ACI of all of the assets of Peoria (with the exception of corporate records and cash to close the transaction) in return for 16,319 shares of ACI stock, assumption by ACI of Peoria liabilities, and the subsequent dissolution of Peoria and distribution to its shareholders of the ACI stock at the resulting rate of one share of ACI for each five shares of Peoria. The plan was expressly subject to the approval of the shareholders of Peoria.

9. A Notice of Special Meeting was sent to all of the shareholders of Peoria on March 15, 1965 (bearing date March 12), calling for meeting on March 31, 1965 to consider the plan and liquidation of the company as provided in the agreement. A copy of the Agreement and Plan was enclosed showing the number of ACI shares to be received in exchange for the assets. A letter was written by Mr. Robinson, as President of Peoria, which accompanied the Notice of Meeting and Plan, in which approval was recommended to Peoria shareholders for three main reasons:

(1) Peoria shareholders would obtain a readily marketable security at a relatively low valuation based on market history.

(2) ACI shares had a history of dividends whereas Peoria shares did not.

(3) The interest in a larger, more diversified company would offer stability not dependent on local conditions.

This letter also told the Peoria shareholders that U.S. Cold (holder of 87%) had indicated its approval; that a favorable vote of two-thirds of the outstanding shares was required; and that any dissenting shareholders had appraisal rights under the Illinois statutes.

10. At the March 31, 1965 meeting of Peoria shareholders, 75,533 shares were represented in person or by proxy out of 81,594 shares outstanding. 71,-322 shares (70,539 belonging to U.S. Cold) were voted in favor of the exchange of ACI stock for Peoria assets and for the ACI share distribution and dissolution of Peoria. Mr. Swanson, the plaintiff here, spoke in opposition to both propositions and stated his clear desire that his own 2703 shares be shown as voted in opposition to both. He also held proxies for 1508 shares which he stated were being voted against dissolution, but his statements about them were equivocal on the issue of the exchange of Peoria assets for ACI shares. He said the holders were opposed to it, but also said, "I think I will abstain from voting for the proxies. I will merely vote my own stock in person." Mr. Swanson declined to use the written ballots provided, even for his own shares. Both propositions were declared adopted by the requisite two-thirds majority.

11. Neither the plaintiff nor any other Peoria shareholder availed himself of the appraisal rights provided for dissenting shareholders by the Illinois statutes (Ch. 32, Ill.Rev.Stat. § 157.73), which statute provides that a dissenting shareholder who does not follow its procedures shall be conclusively presumed to have consented to the exchange and shall be bound by the terms thereof.

12. The exchange of ACI shares for Peoria's assets was carried out, and thereafter ACI liquidated in arms-length transactions the major tangible assets of Peoria for a total price substantially less than the value attributed to them in the exchange.

13. Only forty Peoria shareholders, representing 7% of the outstanding shares of Peoria, have failed to turn in their Peoria shares in exchange for ACI shares, after notice of their right to do so. (Some fifty-one other Peoria shareholders, representing a total of 1574 shares, or 1.9%, do not receive mail from the company, having failed to provide the company with proper addresses so that mail addressed to them is returned to the company by the Post Office Department as undeliverable.)

14. 74,285 Peoria shares have been voluntarily exchanged for ACI shares, pursuant to the plan. This included 70,539 shares held by U.S. Cold, but also 3,746 shares held by over 60 other shareholders in individual lots ranging between 3 and 859 shares. 49 different shareholders among these held less than 50 Peoria shares each.

15. Plaintiff holds 2703 Peoria shares. 43 of the 51 people who, in effect, have thus far abandoned their Peoria shares, and 30 of the 40 others who have failed to date to make the ex-

change, for reasons best known to themselves, hold less than 50 Peoria shares each.

16. In September, 1965, ACI began, and in September, 1966, completed, construction of a new cold storage warehouse at East Peoria, Illinois, at a cost of $1,318,581 (including land), which it sold to U.S. Cold on June 30, 1967 for $1,586,405, its then appraised value.

## DISCUSSION OF CONTENTIONS

■ Plaintiff contends that defendants have somehow cheated him and Peoria by taking its assets at too low a price and by converting same to their own use through this plan, including among the assets a "corporate opportunity" to build and operate a new cold storage warehouse to serve the promising market therefor around Peoria, Illinois. It is beyond dispute that, on an individual market value basis, the exchange allowed too much for the tangible assets of Peoria because ACI incurred a loss in their liquidation. This leaves only theoretical "goodwill" and the so-called "corporate opportunity" for possible dispute; yet it is clear that Peoria, as a separate corporate entity, was financially unable to float such a venture and that, under the plan of reorganization adopted, Peoria shareholders do participate in the exact same venture through their ownership of ACI shares. Plaintiff argues that his 3% interest in Peoria is something vastly different from his minuscule percentage interest in the much larger ACI, but this can have validity only to the extent of some possible undervaluation of Peoria shares in the exchange. It can have no validity in support of a charge of fraud or deceptive stock manipulation. It simply doesn't tend to support such a charge.

■ It is apparent that plaintiff here is entitled under the Plan to one share of ACI for each five shares of Peoria he holds. This hardly looks fraudulent when viewed against the fact that the majority owner of Peoria, only three years earlier, had voluntarily, and at arms length, sold his control to ACI on a basis of nine shares of Peoria for one of ACI. There is absolutely nothing in the voluminous record here to suggest that defendants, or any of them, did, or failed to do, anything to plaintiff's detriment except his wholly unsupported allegations and expressed theories which all wash out in the light of the foregoing facts. Plaintiff contends that he is not required to try his case by affidavit on a motion for summary judgment; but he is required by affidavit, or otherwise under oath, to dispute facts, which undisputed are dispositive of the case as a matter of law, or the motion for summary judgment must be granted. This he has wholly failed to do. It appears to the Court that there is no material issue of fact to be tried.

■■ The basic question of law here is whether defendants, or any of them, can be guilty of any "manipulative or deceptive device or contrivance" in violation of the Federal Securities Act, or regulations thereunder, or of common law fraud in the premises. It is not sufficient that there be a difference of opinion on values involved within the range wherein reasonable men might differ. Obviously there are value judgments to be made in passing upon any proposal for exchange of corporate equity securities or upon a plan leading thereto; and this court is not the arbiter of that kind of issue. It is clear that plaintiff waived any contention at that level when he passed up his appraisal rights for dissenting shareholders under the Illinois statute.

■ Plaintiff argues that defendants didn't give the Peoria shareholders adequate information to enable them to make an informed judgment as to the fairness and adequacy of the reorganization plan, yet there is no indication that defendants, or any of them, concealed or manipulated anything to make it appear different than it was. A few of plaintiff's assertions of supposed fact in argument on this point are simply not borne out by the record citations they make; but the Court considers even the

overstatements immaterial. The fiduciary duty to its shareholders of the Peoria directors, who admittedly were placed in that position by ACI, did not require them to distribute audit reports on Peoria's books to all its shareholders. It required only that the books and records not be hidden from and be available to the shareholders. It did not require that they be informed that ACI would or might build a warehouse at Peoria, since Peoria had been unable to finance one. It did not require them to state their opinion of a market price of Peoria shares, for which there was no significant market, or to search out and report on isolated sales thereof. The responsibility of directors to stockholders requires fairness, reasonable judgment, and absence of fraud. It does not require spoon-feeding. Here the Peoria shareholders were informed of the number of ACI shares they would receive for their Peoria shares and were in as good a position as anyone to evaluate the proposed transaction if they were interested enough to do so. If they decided they preferred the appraised value of their shares in money instead of the new equity, that right was pointed out to them.

The directors of all the corporations involved were obligated to act reasonably in the interests of their various constituencies. Neither ACI nor U.S. Cold were bound to guarantee obligations of Peoria, or to pursue any particular business opportunity through Peoria simply because plaintiff wanted them to do so. It seems clear that the majority owners of corporate enterprise have rights, as well as the minority shareholders; and that allegations of fraud and manipulation require something more than simply stating them. To give plaintiff the preference he seeks is to allow him to make the business judgments for these corporate enterprises. He has not been elected to this responsibility by the shareholders of ACI or Cold Storage, or even Peoria.

The orderly administration of justice is not advanced by pretense that there are real issues of fact for trial when there are not. Such pretense simply tends to support nuisance litigation and to clog court calendars. These are the apparent reasons for Rule 56 F.R.C.P. and the provision of Rule 12(b) requiring its application in a case such as this. See Board of National Missions of Presbyterian Church in United States v. Smith, 182 F.2d 362 (7th Cir. 1950) and Broderick Wood Products Co. v. United States, 195 F.2d 433 (10th Cir. 1952). As the distinguished District Judge Irving Ben Cooper of the "Mother Court" observed last year, in granting a motion for summary judgment against a complaint under Section 10(b),

> "Plaintiff has charged fraud and conspiracy—charges easy to fling and possessing serious consequences for the accused. Those making such accusations should be prepared to produce evidence as to their validity." Schoenbaum v. Firstbrook, 268 F. Supp. 385, 391 (S.D.N.Y.1967).

Plaintiff here has wholly failed to support such charges or to dispute under oath any of the facts which demonstrate the contrary. It is elementary that he must do one or the other in this posture of the case or there is no material issue of fact to be tried.

This court does not undertake to pass upon the precise correctness of the valuation of Peoria shares used in the exchange ratio here. That is a matter of opinion based on estimates of the business future under alternative conditions, on which reasonable men might disagree. It may be that the shareholders of Peoria receive a few more ACI shares under this plan than is absolutely fair to other ACI shareholders, rather than less as plaintiff argues. The Court does hold that, on the basis of the undisputed facts in this record, this is not a case of fraud or violation of Section 10(b) of the Securities Act of 1934.

Accordingly, the Motion is allowed and judgment will be entered in favor of defendant at plaintiff's cost.