**CINERAMA, INC., a New York Corporation, Plaintiff-Appellant,**

v.

**SWEET MUSIC, S.A., a Swiss Corporation, Defendant,**

and

**Union Bank of Switzerland, a Swiss Corporation, Defendant-Appellee.**

No. 980, Docket 72–2411.

United States Court of Appeals, Second Circuit.

Argued May 31, 1973.

Decided June 14, 1973.

Robert G. Desmond, New York City (Harry B. Swerdlow, and Seward & Kissel, New York City, of counsel), for plaintiff-appellant.

John Dickey, New York City (John W. Timbers, and Sullivan & Cromwell, New York City, of counsel), for defendant-appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

These appeals present an example of how a successful litigant's effort at accelerating collection from an adversary, in a manner which on any view pressed the Rules of Civil Procedure to their limit, has produced substantial delay.

This action in the District Court for the Southern District of New York by Cinerama, Inc., a New York corporation, against two Swiss corporations, Sweet Music, S.A., and Union Bank of Switzerland, stemmed from a written guarantee delivered by Cinerama to the Bank of a loan to be made by the Bank to Sweet Music in order to finance the production of a film which Cinerama was to distribute. In a first cause of action, Cinerama sought a declaration

that, for various reasons unnecessary here to detail, Cinerama had not entered into a guarantee and, in any event, was not liable under its terms; in a second, Cinerama sought to recover damages against Sweet Music. The Bank answered the first cause of action and counterclaimed for the principal of the loan, stated to be $2,100,000, together with interest thereon. Sweet Music also answered and counterclaimed for failure to distribute the film. The Bank moved, under F.R.Civ.P. 56, for an order granting its counterclaim, now limited to $1,825,000, together with interest which was alleged to amount, as of October 31, 1971, the due date of the loan, to 1,-394,984 Swiss francs, and interest at what is referred to as the "contract rate of 8½%" thereafter, and dismissing Cinerama's complaint insofar as the complaint sought a declaratory judgment of non-liability to the Bank.

In an opinion rendered on September 18, 1972, 355 F.Supp. 1113, Judge Tenney concluded that Cinerama's claim of non-liability on the guarantee raised no genuine issue of any material fact, that its complaint for a declaratory judgment should be dismissed, and that the Bank was entitled to partial summary judgment for $1,825,000, the principal amount of the guarantee. He added, 355 F.Supp. at 1121:

> Fact issues still remain, however, with regard to the amount of interest for which Cinerama is liable to the Bank, specifically: (1) the amount of interest in Swiss Francs due on the principal amount of Cinerama's liability from October 15, 1969, to October 31, 1971; (2) the official exchange rate between dollars and Swiss Francs on the applicable date; and (3) interest at the "contract rate of 8½%" referred to in the Bank's brief for the period after the loan became due.

Four days later, judgment was entered in a form proposed by the Bank.

The judgment recited the motion for summary judgment and the decision thereon, and said there was "no just cause for delay for entry of judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure." It thereupon ordered that the Bank recover $1,825,000 and costs from Cinerama; that Cinerama's claim for a declaratory judgment against the Bank be dismissed; and that "the remainder of the action [be] severed."

Evidently fearing that the Bank would endeavor to levy execution on the judgment but that an appeal on its part would be dismissed for lack of finality of the judgment, Cinerama promptly made a motion which, among other things, asked that an order be entered pursuant to F.R.Civ.P. 60(b) "vacating the judgment on the ground that it was improperly entered." [1] The motion also sought reargument on the merits. On October 30, 1972, the court granted the motion for reargument but adhered to its prior decision, and denied the motion to vacate. Cinerama promptly appealed both from the judgment and from the order refusing to vacate it. Cinerama did not file a supersedeas bond under F.R.Civ.P. 62(d), which would have provided an automatic stay during appeal.

Some months were then spent in negotiations, which turned out to be fruitless, that would have avoided a levy of execution by having Cinerama place the Bank on a parity with secured creditors. On May 1, 1973, another panel of this court heard a motion by Cinerama for a stay of execution; Cinerama claimed that it was unable to procure a supersedeas bond but that execution was likely to precipitate insolvency, with great harm to other creditors, employees, and stockholders. Being disturbed by the problem presented by the apparent unappealability of the judgment, the panel granted a stay pending expedited argu-

---

[1]. Cinerama also claimed it had not received the two days notice of settlement required by Rule 14 of the General Rules of the Southern District unless the form of the judgment is consented to in writing or the court otherwise directs.

ment of the appeals. The stay was without prejudice to any proceedings the Bank might choose to take in the district court in order to have the amount of prejudgment interest determined. The Bank filed a motion for summary judgment on that issue, returnable May 24, 1973, before another judge to whom the case has now been assigned, but at this writing he has not yet rendered a decision.

The first sentence of Rule 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Since multiple parties were here involved, there is no doubt that the district court could properly have made the specified direction if it had fully disposed of the separate claim between Cinerama and the Union Bank although it has not determined the controversy between Cinerama and Sweet Music. The propriety of such a disposition, however, does not invest the district court with greater power to characterize a partial disposition of a claim between Cinerama and the Bank as final than if Sweet Music had not been a party. It is settled that, in making the requisite determination and direction under F.R.Civ.P. 54(b), "[t]he District Court *cannot*, in the exercise of its discretion, treat as 'final' that which is not 'final' within the meaning of [28 U.S.C.] § 1291" (emphasis in original), and that "any abuse of that discretion remains reviewable by the Court of Appeals." Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956).

We see no basis for the apparent belief of the district court that it could sever the Bank's claim for principal from its claim for prejudgment interest and render a "final" judgment only for the former. Since the same operative facts that created the right to recover principal gave rise to the right to recover interest, there was but a single claim, as would be evident if the Bank had counterclaimed only for principal and, after obtaining judgment, had endeavored to sue for prejudgment interest. See ALI, Restatement of Judgments 2d, § 61 (Tent. Draft No. 1, March 1973). We held long ago that a district court could not endow with finality a judgment which determined the merits of all of the contentions asserted by parties but had not yet fixed the damages sought by the prevailing ones, even though "the computation would now seem to be comparatively simple, if not ministerial in nature." Petrol Corp. v. Petroleum Heat & Power Co., 162 F.2d 327, 329 (2 Cir. 1947). We see no significant distinction when the court has determined part of the damages, here the principal, but has reserved, as raising fact issues, the amount of prejudgment interest. The matter might stand differently if computation of such interest were a purely ministerial act, with the clerk directed to compute the amount and include the total, compare N.Y. CPLR § 5001(c); see Mower v. Fletcher, 114 U.S. 127, 5 S.Ct. 799, 29 L.Ed. 117 (1885); Republic National Gas Co. v. Oklahoma, 334 U.S. 62, 68, 68 S.Ct. 972, 92 L.Ed. 1212 (1948).

Aetna Casualty & Surety Co. v. Giesow, 412 F.2d 468 (2 Cir. 1969), is directly in point. We there dealt with an agreement whereby the defendant undertook in a certain event to indemnify the plaintiff for "any and all liability, loss, costs, damages, attorneys' fees and expenses of whatsoever kind or nature" which plaintiff might sustain by reason of having issued performance and payment bonds. The district court had en-

tered judgment for damages representing labor and material costs plus interest but severed so much of the claim as was for reasonable counsel fees. We held that "the issues of damages and counsel fees are so inexorably interconnected as to make this a single claim," 412 F.2d at 470, and consequently dismissed the appeal for lack of finality in the judgment.[2] The Bank's argument that nothing that can happen in the interest computation can affect Cinerama's liability for the principal, as determined by the district court, could have been made with equal force in *Aetna*; nothing that could happen in the computation of the reasonable attorneys' fees to which Aetna was entitled could affect the amount owing for labor and materials. The final judgment rule is designed not merely to prevent an appeal on an *issue concerning which the trial court has not*

yet made up its mind beyond possibility of change but also to eliminate the need for separate appellate consideration of different elements of a single claim. The burgeoning loads of the courts of appeals mandate strict adherence to this salutary policy.

Against all this the Bank opposes Brown Shoe Co. v. United States, 370 U.S. 294, 304–311, 82 S.Ct. 1502, 8 L. Ed.2d 510 (1962), where the Supreme Court upheld its jurisdiction under § 2 of the Expediting Act, as amended, 15 U.S.C. § 29, over an antitrust decree directing complete divestiture although no specific plan had yet been approved. The Court made clear that its ruling rested on considerations peculiar to decrees in government civil antitrust suits and was not intended to alter what it characterized as "a cornerstone of the structure of appeals in the federal

2. Judge Smith noted that the counsel fees at issue in *Aetna*, which had been incurred in the defense of other actions against the plaintiff, "are a contractually specified element of damages," as was the interest here. The *Aetna* decision thus does not go to the issue whether failure to fix counsel fees allowable as a matter of judicial discretion in the very action where the decision is under review will deprive a judgment of finality. We have recently decided an appeal in which counsel fees and expenses had not yet been determined and in which the parties did not raise, nor did we notice, any issue of finality, Gerstle v. Gamble-Skogmo, Inc., 478 F.2d 1281, 1308, 1310 (2 Cir. 1973).

The question whether counsel fees should be awarded to a successful party, and if so how much, may well be, at least in some instances, sufficiently distinct to warrant characterization as a separate claim, so that its deferral will not deprive the basic judgment of finality. In Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882), an order awarding a plaintiff counsel fees and expenses out of a trust fund under the control of the court was held to be "a final decree," because "[t]hough incidental to the cause, the inquiry was a collateral one, having a distinct and independent character, and received a final decision." *Id.* at 531. *Cf.* Sprague v. Ticonic National Bank, 307 U.S. 161, 168–169, 59 S.Ct. 777, 83 L. Ed. 1184 (1939). Sometimes the award may be made to an attorney himself,

without his client's application, and the attorney may be able to recover fees from non-parties, even though his client has paid his fee. See Central R.R. & Banking Co. v. Pettus, 113 U.S. 116, 124–125, 5 S.Ct. 387, 28 L.Ed. 915 (1885); Colley v. Wolcott, 187 F. 595 (8 Cir. 1911); Wallace v. Fiske, 80 F.2d 897, 905, 910 (8 Cir.), cert. denied, 298 U.S. 675, 56 S.Ct. 940, 80 L.Ed. 1397 (1936). Delaying a decision on counsel fees until after the merits of a case have been finally determined on appeal may place a claim for attorneys' fees "in much better perspective," Sprague v. Ticonic National Bank, *supra*, 307 U.S. at 168, 59 S.Ct. 777; the benefit achieved by an attorney, the skill he has exhibited in obtaining it, and the total hours he has labored are more readily assessable after the appellate process has run its course. Moreover, the fact that the amount of a counsel fee award may turn on such factors provides support for the view that the claim for counsel fees arises out of a separate transaction or occurrence. In contrast, prejudgment interest is what it is, although, of course, it will not need to be determined if an appellate court holds the defendant not liable for the principal. In the rare, indeed almost unimaginable, case where the determination of prejudgment interest would impose a substantial burden on a district court, resort may be had to the provisions of 28 U.S.C. § 1292(b).

courts," 370 U.S. at 306, 82 S.Ct. at 1513, in garden-variety civil litigation. As the Court pointed out, the development of a plan of divestiture "requires careful, and often extended, negotiation and formulation . . . in a changing market place, in which buyers and bankers must be found to accomplish the order of forced sale," 370 U.S. at 309, 82 S.Ct. at 1515. Uncertainty whether divestiture will in fact be compelled "would only make still more difficult the task of assuring expeditious enforcement of the antitrust laws." *Id.* Beyond this, holding the decree at issue in *Brown Shoe* to be non-reviewable would "disregard the implications of an exercise of judicial authority assumed to be proper for over 40 years," 370 U.S. at 307, 82 S.Ct. at 1514, see also *id.* at 309–310, 82 S.Ct. 1502. Finally, the Court noted that any concern that piecemeal adjudication would result from this procedure could "find no support in history," 370 U.S. at 310, 82 S.Ct. 1502, and that delaying the appeal would be inconsistent with the policies supporting passage of the Expediting Act. *Id.* at 311, 82 S.Ct. 1502. None of these considerations apply to the relatively simple process of determining prejudgment interest, even when, as here, there may be controversy as to the rates of interest and of exchange that may give rise to appealable issues. In the interest of judicial economy, such issues should be considered simultaneously with the appeal on the merits. In short, the jurisdictional decision in *Brown Shoe* is not a datum for reasoning in different contexts.

Although the Bank has not cited the case, we have considered whether finality could properly have been ascribed to the judgment under the rule of Forgay v. Conrad, 47 U.S. (6 How.) 212, 12 L. Ed. 404 (1848), where an appeal was permitted from a decision setting aside a conveyance of land and slaves and ordering a special master to take an accounting of rents and profits. Professor Ward's remark that the principle of that inscrutable decision "is not always a rule of easy application," 9 Moore, Federal Practice ¶ 110.11, at 146 (2d ed. 1973), is somewhat of an understatement, as his discussion shows. However, we find no difficulty in holding *Forgay* inapplicable here. The rule has been confined to judgments "directing immediate delivery of physical property" and ordering an accounting which has not been completed, see Radio Station WOW, Inc. v. Johnson, 326 U.S. 120, 126, 65 S.Ct. 1475, 89 L.Ed. 2092 (1945), and not even to all of these, see Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945); *cf.* Republic National Gas Co. v. Oklahoma, *supra*, 334 U.S. 62, 68 S.Ct. 972.

What has been said leads to the conclusion not only that the direction for the entry of final judgment was an abuse of discretion but that the judgment was not appealable. Confronted with a judgment which in reality was non-final but under which the defendant was facing execution, the Seventh Circuit thought that justice required treating the judgment as appealable, Biggers v. Oltmer Iron Works, 154 F.2d 214 (7 Cir. 1946); a better course would have been to treat the appeal as a petition for mandamus and direct the district court to vacate its declaration of finality. See Rabekoff v. Lazere & Co., 323 F.2d 865, 866 n. 1 (2 Cir. 1963).[3] We are freed from having to consider this Gordian problem by Cinerama's motion to vacate the judgment under F.R.Civ.P. 60(b) and its appeal from the denial thereof. Although a defeated litigant cannot circumvent the time limitations on appeal by styling a belated petition for reconsideration as a motion under Rule 60(b), Wagner v. United States, 316 F.2d 871 (2 Cir. 1963), the denial of a motion

---

3. While the Supreme Court stated in Sears, Roebuck & Co. v. Mackey, *supra*, 351 U.S. at 437, 76 S.Ct. 895, that a court of appeals could review an abuse of a district court's discretion under F.R. Civ.P. 54(b), it did not specify how that was to be done. In the absence of a motion under Rule 60(b), such as was made here, we believe that, as indicated in *Rabekoff*, mandamus is the appropriate method.

*properly* made under Rule 60(b), as Cinerama's motion was, see F.R.Civ.P. 60(b)(6), is final and appealable, Greenspahn v. Joseph E. Seagram & Sons, Inc., 186 F.2d 616, 619 (2 Cir. 1951); Brennan v. Midwestern United Life Ins. Co., 450 F.2d 999, 1003–1004 (7 Cir. 1971), cert. denied, Herriman v. Mid-Western Life Ins. Co., 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972); 7 Moore, Federal Practice ¶ 60.30[3], at 430–31 (2d ed. 1972).

We therefore dismiss Cinerama's appeal from the judgment for lack of appellate jurisdiction but reverse so much of the order denying its motion under Rule 60(b) as declined to withdraw the declaration that there was no just reason for delay in the entry of judgment. The judgment will stand as an interlocutory summary judgment on the liability issue, F.R.Civ.P. 56(c), and as an order specifying the extent to which the amount of damages are not in controversy, *id.* 56(d), but execution cannot be had thereon until the amount of prejudgment interest is determined and a final judgment is entered.[4] Appellant may recover its costs.

---

4. It goes without saying that we intimate no view concerning what should be done if, after the entry of such a judgment, Cinerama should appeal and again move for a stay of execution.