Frank S. MEROLA and Frank J. Merola, Jr., Individually and t/d/b/a Merola's Arco, on their own behalves and on behalf of all others similarly situated, Appellants,

v.

ATLANTIC RICHFIELD COMPANY, a corporation, Appellee.

No. 73–1811.

United States Court of Appeals, Third Circuit.

Argued Feb. 14, 1974.

Decided March 8, 1974.

---

Thomas M. Kerr, Howard A. Specter, David R. Brown, Litman, Litman, Harris & Specter, Pittsburgh, Pa., for appellants.

David J. Armstrong, M. Richard Dunlap, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellee.

Before ADAMS and GARTH, Circuit Judges, and NEALON, District Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This appeal involves the award of attorneys' fees following the settlement of an antitrust action brought on behalf of a class of service station dealers. This Court has recently developed standards for the determination of such an award in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973). We remand for further consideration in light of *Lindy Bros.*

### I

Plaintiffs, Frank S. Merola and Frank J. Merola, Jr., commenced this private antitrust action against the Atlantic Richfield Company (Atlantic) on behalf of all present and former Atlantic "lessee dealers" [1] in the Pittsburgh area.[2] The complaint alleges that by various methods—including threats of lease cancellation and nonrenewal—the defendant restrained the free exercise of business judgment by the lessee dealers. In particular, the complaint charges that At-

---

1. A "lessee dealer" leases his service station directly from Atlantic. Atlantic, in turn, either owns the property outright or holds it as a lessee on a long-term lease. *See* Appellee's Brief at 12. Paragraph 7 of plaintiffs' complaint recites that the action is brought in part on behalf of persons who have operated retail "Arco" service stations within four years of the date of the complaint. Accordingly, the term "former lessee dealer" refers to people who have operated

Arco stations in the relevant geographical area between October 29, 1967 and October 29, 1971.

2. The relevant geographical area is defined by the plaintiffs' complaint as "the Pennsylvania Counties of Allegheny, Beaver and Washington and the parts of Lawrence County and West Virginia in the area referred to by defendant as its Pittsburgh District." See A.–8a.

lantic has coerced dealers: (1.) to purchase automobile tires, batteries, and accessories (TBA) from unnamed co-conspirators, (2) to sell motor fuel at fixed prices, (3) to operate their service stations during hours determined by defendant, and (4) to participate in promotional campaigns (e. g., the distribution of trading stamps). Plaintiffs' allegations, constituting charges of violations of Section 1 of the Sherman Act,[3] vest jurisdiction in the district court pursuant to 28 U.S.C. § 1337.

Prior to a determination of the appropriateness of the class action device, two settlements were agreed upon by the parties. The first, awarding the named-plaintiffs $10,000 in return for the early surrender of plaintiffs' lease, is not a subject of the instant appeal. The second settlement included the present [4] and future lessee dealers in the Pittsburgh area. In exchange for a dismissal of the litigation with respect to this class, Atlantic agreed to alter its leasing policies. Prior to the litigation herein, Atlantic had normally awarded leases for a one year term during the first two years of the leasehold, followed by a three year lease. Pursuant to the settlement, Atlantic agreed that for the next fifteen years, it would offer

leases (to acceptable lessees) [5] for the following terms:

| | |
|---|---|
| original lease | — 1 year term |
| second lease | — 3 year term |
| subsequent leases | — 5 year terms |

The settlement at issue dealt only with the above schedule. However, during settlement negotiations, Atlantic agreed to pay reasonable attorneys fees to be subsequently determined by the District Court.[6]

On December 20, 1972, the District Court approved the settlement as to all present and future lessees who did not opt out or object to the proposed compromise.

■ Three months later a hearing [7] was held on an application for counsel fees and expenses filed by plaintiffs' attorney, Howard A. Specter. Mr. Specter requested a fee of $250,000, this figure based in part upon a theoretical settlement value of $8 million. The defense countered by arguing: (1) that the settlement was without economic benefit to the class, and (2) that far fewer hours than the 871 hours alleged by plaintiffs were actually spent in the class aspects of the litigation. Without abandoning its position that the fee award should not exceed $5000, at oral argument be-

3. 15 U.S.C. § 1.

4. At the commencement of the litigation, the class of present dealers was over 200 in number. By the time of the counsel fees hearing, however, the number had dwindled to 188.

5. Under the terms of the settlement, Atlantic is not obliged to renew any leases whatsoever. However, once Atlantic decides to renew a lease, it must do so according to the schedule noted above.

6. Although the record discloses no written contract, defendant's counsel conceded at oral argument before this Court that an agreement was in existence. This concession corroborates a statement to the same effect made by plaintiffs' counsel at the hearing conducted by the District Court (see A. 185a) and verifies an allegation in plaintiffs' application for fees that was admitted by defendant.

7. The application, without the support of an accompanying affidavit, alleges that Specter's firm spent 871 hours in prosecuting and settling the claims of the class members. These hours were alleged to have a productive value of $57,450. Furthermore, the application claims that counsel incurred out-of-pocket expenses in the amount of $5,901.-72.

We do not approve the use of non-evidentiary submissions in support of requests for attorneys' fees and expenses. Mr. Specter's application, setting forth the essential factors of his claim, should have been supported by affidavits or proof in court. In light of defendant's concession (see n. 10, infra) however, and the Court's treatment of the instant application predicated on that concession, we decline to determine this appeal on that evidentiary ground.

fore the District Court, in response to the claims of plaintiffs' attorney, the defendant suggested that at the very most, the plaintiffs' attorney could not be entitled to more than $18,400.[8]

In a memorandum opinion filed on July 11, 1973, the District Judge explained that he would predicate the award of attorneys' fees on two factors: (1) the time expended in procuring the settlement, and (2) the value of the settlement to class members. The Court found that plaintiffs had failed to establish any benefit to the class and had not proven that any more than 264.2 hours were spent by counsel on class-related issues. On the basis of these findings, the Court awarded counsel $5,000 in attorneys' fees, as well as $5,846.78 in expenses. From the order incorporating this award, plaintiffs appeal, challenging both the time and benefit components of the fee award.[9]

## II

■ It is well-settled that the awarding of attorneys' fees is a matter of discretion for the district court. *See* Tranberg v. Tranberg, 456 F.2d 173, 175 (3d Cir. 1973). In applying this limited standard, however, this Court will scrutinize conclusions of law and findings of fact (upon which the award is based) according to traditional precepts. Where a District Court errs as a matter of law by utilizing improper standards or procedures in determining fees, an abuse of discretion occurs. Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., *supra*, 487 F.2d at 166. Similarly, clearly erroneous findings of fact require rever-

sal. *Cf*. Bradley v. School Board of Richmond, 472 F.2d 318, 320 (4th Cir. 1972) app. pndg 42 U.S.L.W. 3350 (1973). It is with these considerations in mind that we evaluate the award of attorneys fees made herein.

## III

Although Mr. Specter applied for fees on the basis of 871 hours of legal work, the District Court limited recovery to 264.2 hours. Appellants contend that the *ratio decidendi* of this limitation constitutes an error as a matter of law. They state that the Court limited its inquiry to the time spent on negotiating the lease term provisions contained in the final settlement. It is appellant's contention that the scope of the Court's inquiry should have been broader, including all legal work leading to the class settlement.

Appellee offers a justification for the time limitation. The 871 hour figure allegedly represents the total number of hours spent by Mr. Specter's law firm with regard to the Merola litigation. Inasmuch as some part of this time was devoted to the settlement involving only the Merola gas station, less than 871 hours were spent on the class settlement for which counsel is to be awarded fees. Appellee argues that plaintiff-appellant, upon whom the burden of proof lay, did not prove the number of hours related solely to the class settlement. Absent such a demonstration, appellee argues that the Court was justified in limiting recovery to 264.2 hours, this figure representing the minimum number of hours spent on class-related matters.[10]

8. Defendant arrived at this figure by multiplying the estimated productive value of the representation ($57,450) by a fraction having as its numerator the hours actually proven (see n. 10) and as its denominator the hours claimed (871 hours).

9. The District Court's award of out-of-pocket expenses is not challenged on appeal.

10. On June 19, 1972, the Court ordered that discovery pertaining to the determination of class action be completed by September 1, 1972 and that plaintiffs submit their brief in

support of such a determination by September 15, 1972. Atlantic conceded both at the counsel fee hearing and at oral argument before this Court that all work performed by plaintiffs after the June 19 order was related to the class settlement and therefore compensable. Plaintiffs revealed that 264.2 hours of legal work were performed subsequent to June 19 (A. 175a). Thus, this figure (264.2) forms the minimum number of hours spent by plaintiffs' counsel on class-related matters.

Appellee's retort is not fully responsive. While it is true that the Court did conclude that counsel proved no more than 264.2 hours, underlying this conclusion is the premise that time spent on allegedly "peripheral matters"—such as Atlantic's trading stamp policy—is not compensable. We must, therefore, determine whether the adoption of this premise constitutes error.

Our review of the record convinces us that the District Court refused to consider the time spent on the "peripheral matters" because it felt that such time could not have contributed to the settlement.[11] In endeavoring to distinguish between settlement-related time and unrelated time, the Court performed a proper function. As we understand the agreement to pay attorneys' fees, Atlantic did not obligate itself to compensate plaintiffs' counsel for all hours spent on the full Merola law suit. Rather, Atlantic could reasonably be expected only to compensate counsel for time spent on matters related to the end product, i. e., the settlement. Thus, the Court's role of enforcing the fee agreement necessarily required the District Judge to determine which hours spent were related to the settlement.

■ Having found that the Court employed a proper procedure in determining the character of the time spent, we must next determine whether the Court abused its discretion in concluding that the peripheral matters were unrelated to the settlement. Appellants contend that the tying effect between the short-term lease and other coercive oil company practices is well-established in the case law. This may indeed be true.[12] However, this case law is of little relevance herein. The crucial inquiry is not whether oil companies in general, or Atlantic in particular, have coerced service stations, but rather whether Mr. Specter's work on issues such as the trading stamp policy was related to the settlement. Turning to the only possible source for such an inquiry, the record, we find that the District Court did not abuse its discretion in concluding that the "peripheral matters" were unrelated to the settlement. Plaintiffs submitted no proof demonstrating that any more than the 264.2 hours were spent on settlement-related matters. Indeed, the assertion that 871 hours were spent on the litigation is supported not by an affidavit, but only by bald allegations in the application for fees and by a casual statement by counsel at the hearing.[13] Having failed to establish a factual relationship between the settlement and these 871 hours, plaintiffs cannot now complain that the Court erred in choosing the figure conceded by appellee.[14]

We hold that in making the determination as to the relationship between the "peripheral matters" and the settlement,

---

11. In this vein, the District Court stated at one point in the hearing:
    " . . . [O]riginally, you filed suit for a much broader class and that concerns me deeply, because Mr. Beggy [another attorney] came along and picked up the rest of those and . . . I still have them. But they were all there, and you presented rather elaborate claims on behalf of a large number of people and your effort was over about the time you reached the settlement. So, I am not willing to accept the statement that all that time [the 871 hours] went for the leases *and for that limited part of the class,* and I have suggested to you that

you better have some data on that or you are running into problems with your burdens of proof."
A. 185a. (emphasis added).

12. *See, e. g.,* Atlantic Refining Co. v. Federal Trade Commission, 381 U.S. 357, 85 S.Ct. 1498, 14 L.Ed.2d 443 (1965).

13. *See* A. 178a.

14. Given the inadequacy of the proofs, had defendant-appellee not conceded that 264.2 hours were spent, there might well have been insufficient evidence to make *any* finding regarding the time spent. (*See* n. 7, supra).

the District Court neither erred in adopting the procedure nor abused its discretion in finding no relationship. We thus affirm the limitation of time spent to 264.2 hours.

## IV

Appellants contend that the District Court erred in finding that they had not proven a benefit to the class as a result of the settlement. For the reasons outlined below, we need not reach this contention.[15]

■ Unlike the British system, in American courts the general rule is that attorneys' fees are not recoverable. However, it is well-recognized that counsel fees may be awarded whenever the parties have entered into an enforceable agreement providing for same. *See* Hall v. Cole, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967); Kahan v. Rosenstiel, 424 F.2d 161, 165 (3d Cir.), cert. den. sub nom. Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); Alland v. Consumers Credit Corp., 476 F.2d 951, 955–956 (2d Cir. 1973) (construing New York law); 6 Moore's Federal Practice ¶ 54.77[2]. In the instant case, the parties question neither the existence of an agreement authorizing counsel fees nor the author-

ity of the Court to award fees pursuant thereto. We focus our review, therefore, not on the authority of the District Court, but rather on the standards applied by the Court in arriving at the award of $5000.

This Court's most recent discourse on attorney fee standards appears in Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973). We held in *Lindy* that the award of attorneys' fees following the settlement of an antitrust class action should be formulated in terms of the following factors:

a) the number of hours spent in various legal activities by the individual attorneys;

b) the reasonable hourly rate for the individual attorneys;

c) the contingent nature of success; and

d) the quality of the attorneys' work. 487 F.2d at 167–169.

*Lindy* is, in some respects, distinguishable from the instant case. Unlike the arrangement between the parties herein, in *Lindy* there was no enforceable agreement relating to attorneys' fees. The predicate for the award of fees in *Lindy* thus was not, as here, an agreement, but rather was the benefit bestowed upon the class in the form of a common fund.[16] 487 F.2d at 165–166.

---

15. We have some difficulty with the District Court's holding of "no benefit." *Cf.* Mills v. Electric Auto-Lite, 396 U.S. 375, 392–397, 90 S.Ct. 616, 24 L.Ed.2d 593 (recognition of non-pecuniary benefits). However, in view of our direction to the District Court to review the award of attorneys' fees in light of *Lindy*, we are not called upon, at this time, to measure that finding against the "clearly erroneous" standard of Fed.R.Civ.P. 52(a).

16. In the absence of an agreement or statute authorizing compensation, attorneys' fees are recoverable only in limited situations. *See* Fleischmann Distilling Corp. v. Maier Brewing Co., *supra*, 386 U.S. at 717–719, 87 S.Ct.

1404, 18 L.Ed.2d 475; Kahan v. Rosenstiel, *supra*, 424 F.2d at 165–168. The Courts have recognized the conferring of benefits upon non-litigants as one such situation. *See, e. g.,* Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1881) (creation or preservation of a common fund as a benefit); Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) (stare decisis effect of a judgment as a benefit); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 392–397, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) (non-precuniary result as a benefit); *see generally* 6 Moore's Federal Practice, ¶ 54.77[2]; Wright and Miller, 7A Federal Practice and Procedure, § 1803.

Having identified "benefit" as the basis for an award, this Court then developed the standards in *Lindy* with the objective of compensating the attorney for the value of services benefiting the non-litigants. 487 F.2d at 167.

■ We see no reason why the *Lindy* standards need be confined to situations in which benefit analysis (as distinct from an agreement to pay attorneys' fees) supplies the quasi-jurisdictional predicate. The *Lindy* standards isolate the primary factors that should be examined in developing a reasonable attorneys' fee. The first two factors (time spent and reasonable rate) produce what might be considered the market value of the attorneys' services. The latter two (risk and quality of work) permit the district judge the needed flexibility to tailor the award to the actual performance of counsel. The end result—an amalgam of expected value and delivered performance—represents a reasonable fee under normal circumstances. Given the suitability of the *Lindy* standards to the determination of reasonable fees, we hold that in enforcing an agreement to pay reasonable attorneys' fees, courts in this circuit should apply the *Lindy* standards to determine the amount of the award.

The distinguished District Judge was in no position to foresee our application of *Lindy* to the facts of the instant case. Indeed, *Lindy* had not yet been decided at the time that the memorandum opinion herein was filed. Nevertheless, appellee contends that the District Court did, in fact, analyze the factors highlighted in *Lindy*. We disagree. Although reference is made to the first of the factors, we find neither the specificity mandated by *Lindy* nor an analysis of the remaining factors outlined by Chief Judge Seitz in *Lindy*.

Accordingly, this case will be remanded for reconsideration in light of the standards articulated in *Lindy*.