517 F.2d 555
 Knute SWANSON, on behalf of Peoria Service Company, and on
behalf of all shareholders of Peoria Service
Company similarly situated, Plaintiff-Appellant,
v.
AMERICAN CONSUMER INDUSTRIES, INC., a New Jersey
Corporation, et al., Defendants-Appellees.
 Nos. 74-1430, 74-1434.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 11, 1975.
Decided May 29, 1975.
 
 Richard Orlikoff, John N. Tierney, Chicago, Ill., Thomas V. Cassidy, Peoria, Ill., Arthur T. Susman, Chicago, Ill., for plaintiff-appellant.
 Frank O. Wetmore II, Chicago, Ill., for defendants-appellees.
 Before PELL and TONE, Circuit Judges, and JAMESON, Senior District Judge.*
 TONE, Circuit Judge.
 
 
 1
 In this derivative and class action, the minority shareholders of Peoria Service Company (Peoria) have sought rescission of sale of the corporate assets and damages. On the only issue properly before the court on this third appeal, the measure of attorneys' fees to be paid to plaintiffs' attorneys, we reverse the order of the District Court which allowed fees of $21,336.00, holding that amount inadequate in the circumstances of this case, and increase the amount to $40,000.00.
 
 
 2
 The case has been in the federal courts for ten years, having been filed in 1965 to challenge a proposed reorganization plan calling for the transfer of substantially all of Peoria's assets to American Consumer Industries, Inc. (ACI), in exchange for shares of ACI stock, and the liquidation of Peoria. The complaint asserted that the proxy statement issued in connection with the Peoria shareholder vote on the proposed plan was materially misleading in that it failed to inform the shareholders of the actual value of the corporate assets in violation of Section 10(b) of the Securities Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 of the Securities Exchange Commission regulations. At the time the proxy statement and the plan were under consideration, ACI, through its 90% subsidiary United States Cold Storage Corporation (U.S. Cold), owned 87% of the outstanding shares of Peoria and controlled its board of directors.
 
 
 3
 In August 1968, the District Court entered summary judgment for defendants. 288 F.Supp. 60 (S.D.Ill.1968). This court reversed and remanded for trial. 415 F.2d 1326 (7th Cir. 1969). After trial, the District Court again entered judgment for defendants. 328 F.Supp. 797 (S.D.Ill.1971). This court again reversed, holding that "plaintiff shareholders have proven all the elements required to impress liability on defendants under Section 10(b) . . . and . . . Rule 10b-5 for loss of their informed ability to exercise their statutory appraisal rights." 475 F.2d 516, 521 (7 Cir. 1973). Our mandate directed as follows:
 
 
 4
 "ACI must offer to each Peoria shareholder $3.55, the market value attributed to Peoria stock in the reorganization plan, for each share of Peoria stock held by such shareholder on March 31, 1965, together with legal interest from that date to the date judgment is entered by the district court. Any minority shareholders who exchanged Peoria shares must, of course, return an equivalent number of ACI shares exchanged in order to receive the cash. Plaintiff is also entitled to reimbursement of reasonable attorneys' fees in an amount to be fixed by the district court, of course taking into consideration the modest recovery achieved, but cognizant that pecuniary benefit is not the sole criterion for the award of attorneys' fees. (Citing Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), and other cases.) " 475 F.2d at 521.
 
 
 5
 On September 4, 1973, the District Court entered a judgment order pursuant to the mandate requiring ACI to make available to "plaintiff shareholders" (defined as those who had not exchanged their Peoria shares for ACI shares or, having exchanged, retained their ACI shares and stock dividends thereon) $3.55 per share of Peoria held on March 31, 1965 with interest thereon at 6 per cent; providing a procedure for notifying shareholders entitled to participate and payment of those electing to receive payments; assessing costs against defendant ACI; and retaining jurisdiction to make any further orders necessary to carry out this court's mandate, including the determination and award of attorneys' fees. The judgment order also provided:
 
 
 6
 "Any Peoria shareholder on March 31, 1965 who can make a showing to this court within ninety (90) days after the date hereof that his or her liquidation of either Peoria or ACI shares here involved causes inequitable treatment hereunder, by exclusion from the term 'plaintiff shareholder,' may receive special consideration on a ratable basis." (Judgment Order, Sept. 4, 1973, pp. 2-3.)
 
 
 7
 Notice of the terms of the order, however, was sent only to those defined in the order as "plaintiff shareholder."
 
 
 8
 No notice of appeal was ever filed from the judgment order of September 4, 1973. In an order entered April 4, 1974 the District Court allowed attorneys' fees in the total amount of $21,336, and ordered ACI, as Peoria's successor, to pay those fees.
 
 
 9
 Two notices of appeal were thereupon filed, both purporting to appeal from the April 4, 1974 order. The first was filed by plaintiffs' attorney Richard Orlikoff solely, on his own behalf. The second was filed by plaintiffs' other attorney Arthur Susman on behalf of both himself and plaintiffs. The attorneys have filed separate briefs in this court. Only Mr. Orlikoff seeks to challenge the September 4th order, which he contends erroneously excluded from the redemption opportunity shareholders who exchanged in 1965 and then sold their ACI stock. Mr. Susman limits his argument to the amount of the attorneys' fees.
 
 
 10
 Defendants argue that because the Orlikoff notice of appeal states that only he, and not his clients, appeals, and he is the only one who seeks to challenge the September 4th order on behalf of former Peoria ACI shareholders, there had been no appeal by plaintiffs themselves from the September 4th order. This would be correct, if it were not for the Susman notice of appeal, which is on behalf of plaintiffs as well as Mr. Susman himself. Plaintiffs are entitled to the benefit of the latter notice of appeal.
 
 
 11
 Defendants also argue that the final judgment in the case was the September 4th order and that since plaintiffs failed to appeal from that order within 30 days they have lost their right to challenge it. We agree.
 
 APPEALABILITY
 
 12
 We begin our analysis with the venerable Supreme Court case that sets forth the basic principle of finality:
 
 
 13
 ". . . a decree is final . . . when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined." St. Louis, Iron Mountain and Southern Ry. Co. v. Southern Express Co., 108 U.S. 24, 28-29, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883).
 
 
 14
 In that case, the Court held the decree in question final, even though the issue of the payment of certain transportation fees accruing during the pendency of the litigation remained unresolved, because "(a)ll such matters relat(ing) to the administration of the cause . . . are incidents of the main litigation, but not necessarily a part of it," and thus do "not enter into the merits of the case."
 
 
 15
 Characterization of the relationship of attorneys' fees awards of the type involved here to the main subject of the litigation poses a difficult problem, since they are not taxable costs, nor yet are they a remedy based on a separate and distinct cause of action. Attorneys' fees are ordinarily not recoverable under the traditional American Rule applied in the federal courts except when authorized by statute or contract. F. D. Rich Co., Inc. v. United States for Use of Industrial Lumber Co., Inc., 417 U.S. 116, 129-130, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). They do not qualify as ordinary "taxable costs" either at common law or by statute.[1] Meddaugh v. Wilson,151 U.S. 333, 347, 14 S.Ct. 356, 38 L.Ed. 183 (1894); Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 168-169, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). The Supreme Court has described a claim for attorneys' fees as a
 
 
 16
 ". . . claim for 'as between solicitor and client' costs . . . not directly in issue in the original proceedings . . . . They are not of a routine character like ordinary taxable costs; they are contingent upon the exigencies of equitable litigation, the final disposition of which in its entire process including appeal place such a claim in a much better perspective than it would have at an earlier stage. . . ." Sprague v. Ticonic Nat. Bank, supra, 307 U.S. at 168, 59 S.Ct. at 781.
 
 
 17
 The Court in Sprague relied on Trustees v. Greenough, 105 U.S. 527, 531, 26 L.Ed. 1157 (1882), in holding that
 
 
 18
 ". . . an order allowing costs 'as between solicitor and client' was a final judgment for purposes of appeal because 'the inquiry was a collateral one, having a distinct and independent character.' " 307 U.S. at 169, 59 S.Ct. at 781.
 
 
 19
 Trustees v. Greenough, supra, in which the appeal from the order awarding fees was permitted before termination of the case in the district court, was a precursor of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545-546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), the case establishing the general doctrine of the appealability of "collateral orders."
 
 
 20
 The principles in the series of Supreme Court cases just described remain controlling. Their reasoning has been followed in many cases holding awards of attorneys' fees to be "collateral" in nature and appealable under § 1291 before termination of the main case. E. g., Angoff v. Goldfine, 270 F.2d 185, 186 (1st Cir. 1959); Cinerama, Inc. v. Sweet Music, S. A., 482 F.2d 66, 70 n. 2 (2d Cir. 1973); United States Steel Corp. v. United Mine Workers, 456 F.2d 483, 486-487 (3d Cir. 1972), cert. denied, 408 U.S. 923, 92 S.Ct. 2492, 33 L.Ed.2d 334 (1972); Preston v. United States, 284 F.2d 514, 515 n. 1 (9th Cir. 1960); Bakery and Confectionery Workers Int'l Union of America v. Ratner, 118 U.S.App.D.C. 269, 335 F.2d 691 (1964).
 
 
 21
 Under the law of this case, as established in our earlier opinion (475 F.2d at 521), recovery of attorneys' fees in this derivative and class action is predicated on the "fund" theory, as developed in Mills v. Electric Auto-Lite, 396 U.S. 375, 389-397, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). In Mills, an extension of Trustees v. Greenough, supra, the rationale for awarding fees was that the expense of prosecuting the action should be borne by those who benefited by the judgment. This was accomplished by having the corporation pay the fees, since all its shareholders thereby bore the cost equally with the benefit. This distribution of costs is "between solicitor and client," in the terms of Trustees v. Greenough, supra, and not between the adverse parties to the case. Kahan v. Rosenstiel, 424 F.2d 161, 167 (3d Cir. 1970), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). It is in their role as former shareholders and as the successor corporations of the nominal defendant Peoria that ACI and U.S. Cold may have a portion of the attorneys' fees imposed upon them, not in their other role as defendants in this litigation.
 
 
 22
 Because the claim of named plaintiffs for attorneys' fees essentially lies against other "plaintiff beneficiaries," and the basis for that claim is the course of the litigation itself rather than the earlier transaction out of which the original cause of action arose,[2] the strictures of Rule 54(b) of the Federal Rules are not applicable. Those provisions for disposing independently of individual claims cover only separate "causes of action." Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436, 76 S.Ct. 895, 100 L.Ed. 1297 (1956); Smith v. Benedict, 279 F.2d 211, 213 (7th Cir. 1960); see 6 J. Moore, Federal Practice P 54.31, at 471-472 (2d ed. 1974). A "collateral" order, which according to Cohen v. Beneficial Industrial Loan Corp., supra, 337 U.S. at 546-547, 69 S.Ct. at 1225, does "not make any step toward the final disposition of the merits of the case and will not be merged in final judgment" and "is not an ingredient of the cause of action and does not require consideration with it," cannot be certified under the rule and may be independently appealed. Baxter v. United Forest Products Co., 406 F.2d 1120, 1123 (8th Cir. 1969), cert. denied,394 U.S. 1018, 89 S.Ct. 1635, 23 L.Ed.2d 42 (1969).
 
 
 23
 The particular question involved in the instant case has apparently not been decided before. The Second Circuit noted the problem in a footnote in Cinerama, Inc. v. Sweet Music, S. A., supra, 482 F.2d at 70 n. 2, in which it indicated that an appeal on the merits of another case, Gerstle v. Gamble-Skogmo, Inc., 478 F.2d 1281, 1308, 1311 (2d Cir. 1973), had been allowed prior to a resolution of the issue of attorneys' fees in the court below. In Gerstle, however, the question of finality was neither raised by the parties nor noticed by the court, according to the Cinerama panel. 482 F.2d at 70 n. 2.
 
 
 24
 We conclude that attorneys' fees awards are "incidental" to the main litigation, and thus reservation of the issue of fees does not affect the finality of the decision on the merits of the case. Therefore, when plaintiffs failed to appeal from the judgment of September 4, 1973, they lost their right to a review of that judgment. See Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 514-516, 70 S.Ct. 322, 94 L.Ed. 299 (1950). See also Howze v. Arrow Transportation Co., 280 F.2d 403, 405 (5th Cir. 1960), cert. denied, 364 U.S. 920, 81 S.Ct. 285, 5 L.Ed.2d 260 (1960).
 
 THE ATTORNEYS' FEES AWARD
 
 25
 In their petitions to the District Court requesting that attorneys' fees be awarded to them, plaintiffs' attorneys asked for a total of $89,377 to be paid for 1986.85 hours of work on the case, and reimbursement for out-of-pocket expenses of $4595.11, not covered by the earlier award of taxable costs. In an order dated April 4, 1974, the District Court ordered ACI as Peoria's successor to pay the claim for additional expenses in full and a total of $21,336.00 as payment for attorneys' fees. Since the award of expenses is not challenged on appeal, the question before us is whether the District Court erred in awarding the specific amount as fees.
 
 
 26
 That abuse of discretion is the general standard for review of trial court awards of attorneys' fees under the "fund" theory derived from Trustees v. Greenough, supra, 105 U.S. 527, 26 L.Ed. 1157, is well-established. See, e. g., Harrison v. Perea, 168 U.S. 311, 325, 18 S.Ct. 129, 42 L.Ed. 478 (1897); Merola v. Atlantic Richfield Co., 493 F.2d 292, 295 (3d Cir. 1974); Kahan v. Rosenstiel, supra, 424 F.2d at 174. While "we are not permitted to substitute our judgment for that of the District Court," Woods v. Pielet, 187 F.2d 453, 456 (7th Cir. 1951), we can review the bases for the decision on fees and revise it if necessary. See People of Sioux County, Nebraska v. Nat. Surety Co., 276 U.S. 238, 244, 48 S.Ct. 239, 72 L.Ed. 547 (1928); cf. Walker v. Columbia Broadcasting System, Inc., 443 F.2d 33 (7th Cir. 1971). In applying the abuse of discretion standard, we examine findings of fact to determine whether they are clearly erroneous and conclusions of law to determine whether they embody or rest upon "improper standards or procedures." Merola v. Atlantic Richfield Co., supra, 493 F.2d at 295.
 
 
 27
 In the instant case, certain of the factual criteria normally used for determination of the appropriate amount of fees were not disputed, i. e., the total number of hours spent, and the general competence, professional experience, and training of the attorneys involved. The District Court's acceptance of these facts for the basis of the decision on the question of fees, and the determination as to the appropriate hourly rates were not clearly erroneous. In refusing to permit recovery for time spent on the litigation of issues upon which plaintiffs did not prevail, however, the District Court applied what we conclude is an erroneous legal standard.
 
 
 28
 It was entirely appropriate for the District Court to take into consideration the modesty of the relief ultimately accorded plaintiffs and the class they represented, as indeed this court directed. But it does not follow that failure to prevail on the issue of fairness barred any recovery whatsoever for fees attributable to this phase of the litigation.
 
 
 29
 The Supreme Court in Mills explained the rationale for the shifting of fees in securities litigation in the following terms:
 
 
 30
 ". . . petitioners, who have established a violation of the securities laws by their corporation and its officials, should be reimbursed by the corporation or its survivor for the costs of establishing the violation. . . .
 
 
 31
 ". . . (For) regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute. To award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." (Footnotes omitted.) 396 U.S. at 389-390, 396-397, 90 S.Ct. at 624.
 
 
 32
 In the F. D. Rich case, supra, 417 U.S. at 129-130, 94 S.Ct. at 2165, the Court described Mills as a case "where a successful litigant has conferred a substantial benefit on a class of persons and the court's shifting of fees operates to spread the cost proportionately among the members of the benefited class." See Alyeska Pipeline Service Co. v. The Wilderness Society, supra, n. 1, --- U.S. ---, 95 S.Ct. 1612.[3]
 
 
 33
 The Court in Mills reserved the question of whether plaintiffs could recover an additional award of attorneys' fees to reimburse them for the expense of litigating the question of relief. (396 U.S. at 390, 90 S.Ct. 616 n. 13.) We must now reach that question, because an element of the claim for fees before us is for services in proceeding to trial on the issue of the consequences of the violation of the securities laws and the relief that should be granted. Once the violation had been established, it became necessary to determine its consequences and the appropriate relief. Given the holding of Mills that the expense of establishing the violation was "incurred for the benefit of the corporation and the other shareholders" (396 U.S. at 392, 90 S.Ct. at 625), it follows that the expense of establishing the effects of the violation was also incurred for the benefit of the corporation and the other shareholders. The corporation should bear that expense.
 
 
 34
 We are not persuaded by defendants' argument here that the other potential members of the "benefited" class who opted out of the litigation should be exempt from sharing the burden of the attorneys' fees, because this approach conveniently ignores the derivative aspect of this litigation. The corporation cannot opt out of derivative litigation, and since it, too, as well as its shareholders, is in law benefited by the establishment of the violation of the securities laws under the "corporate therapeutics" theory of Mills, it must assume on behalf of its shareholders the cost. It is through the corporation that the shareholders, including class members who opted out, remain liable for a portion of the attorneys' fees. On the other hand, it must be noted that this derivative obligation extends to the named plaintiffs as well, in proportion to the amount of stock they held at the time of the proposed reorganization.
 
 
 35
 At the same time, we are unable to agree with the appealing attorneys that they should recover fees in the amount of $89,377. The fact that they failed to prevail on several of the issues they raised is entitled to weight in the determination of the appropriate amount of the fee award, as conversely, an attorney's success on all or most of the important issues in a case would likewise be entitled to weight in determining his fee. The amount that an attorney can expect to receive as a fee for prosecuting a case, absent an understanding with the client to the contrary, is necessarily related, as suggested by this court's opinion on the second appeal, to the amount actually recovered. It is also related in some degree to the amount that could realistically have been hoped to be recoverable.
 
 
 36
 In this case the remedy provided the minority shareholders with the opportunity to receive the cash value of their stock, plus interest for the intervening years. Because the District Court decided that the terms of the original reorganization plan had been objectively fair, despite the violations of the securities laws in the proxy statements, the final judgment in effect enabled Peoria shareholders to exercise their statutory right of appraisal and receive the equivalent amount in cash which they could have obtained under the original plan by exchanging for shares of ACI. The amount actually recovered by the eleven shareholders who filed claims was $17,263.65 in principal amounts and $8,692.18 in interest. If all minority shareholders who did not opt out had filed claims, these amounts would have been increased by about $11,000 and $5,200. Turning to the maximum possible recovery, the amount by which Peoria stockholders could have been injured by the undervaluation, on any realistic view, could not exceed.$187,418. That figure assumes the value placed on Peoria by plaintiffs' own expert witness. (See opinion of Judge Sprecher, concurring in part and dissenting in part, 475 F.2d at 528.) Assuming that figure, the monetary benefit in excess of the amounts to be paid under the terms of the reorganization plan to all minority shareholders of Peoria would be about $25,000, and to those who did not opt out of the class action, about $18,000. Thus, a maximum of $25,000 in additional payments could have changed hands as part of a judgment that the terms of the acquisition were unfair and undervalued Peoria's assets, if plaintiffs' damage evidence had been accepted. In the light of these figures, an award in the amount requested would be disproportionate to the potential recovery as well as the actual recovery, even when consideration is given to the other factors considered earlier in this opinion.
 
 
 37
 The other principal issue in the trial was plaintiffs' claim that $267,824, ACI's profit on a transaction factually separate from the reorganization, should be turned over to Peoria shareholders on a theory of constructive trust because ACI had breached its fiduciary duty to minority shareholders by usurping a corporate opportunity of Peoria's. Plaintiffs did not prevail at trial on this or other common law claims of varying merit. These claims were merely tangential to the claim under the federal securities laws, coming within federal jurisdiction on a pendent jurisdiction basis, so that plaintiffs' success on the latter claim which necessitated trial on the issue of fairness did not similarly dictate the need for further proceedings on these. We find no abuse of discretion in the District Court's disallowance of fees for time attributable to these collateral matters, in light of the court's conclusion that many of these claims were "unfounded" and "extravagant."
 
 
 38
 In sum, therefore, while we conclude that the services of plaintiffs' attorneys in litigating the issue of fairness, as well as their services in establishing the violation of the securities laws by Peoria and the controlling shareholders, justify an award larger than that ordered by the District Court, the award must be tempered by a consideration of the failure of plaintiffs to prevail on several issues presented at trial, the total amount in the issue on a realistic view of the case, and the modesty of the actual recovery. Taking into account these factors, we conclude that a total fee award of $40,000, to be divided between the attorneys in the same proportion as the District Court's award, is appropriate in this case, rather than the lesser amount awarded by that court. The case is remanded to the District Court with directions to enter an appropriate order.
 
 
 39
 Reversed and remanded.
 
 
 
 *
 Senior District Judge William J. Jameson for the District of Montana is sitting by designation
 
 
 [1]
 Except for "the small amounts allowed by (28 U.S.C.) § 1923" (Alyeska Pipeline Service Co. v. The Wilderness Society, --- U.S. ---, ---, ---, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975)) or when Congress has defined recoverable costs as including "reasonable attorneys' fees" as in the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3(b). Id. at. ---, 95 S.Ct. 1612; see also id. at ---, 95 S.Ct. 1612 n. 33
 
 
 [2]
 Some of the factors involved in determining the appropriate amount of a fee award are distinct from the merits of the case itself. Among these are the skill, professional standing, and experience of the attorneys and the total hours expended by them on the preparation and presentation of the case. Other relevant considerations, the importance and difficulty of the case, and the results achieved by the attorneys' efforts, are related to the merits but they, too, are evaluated from the standpoint of the "client." See generally, e. g., Cinerama, Inc. v. Sweet Music, S. A., supra. 482 F.2d at 70 n. 2; 6 J. Moore, Federal Practice P 54.77(2), at 1716 (2d ed. 1974)
 
 
 [3]
 In their briefs on appeal, both the attorneys for plaintiffs and the attorneys for defendants argue the merits and applicability of the "private attorneys-general" theory of awarding attorneys' fees, a theory we find irrelevant to the present case. Since the oral argument in this case, the Supreme Court has explicitly rejected the "private attorneys-general" rationale for awarding fees, in the absence of a statutory provision for such an award. Alyeska Pipeline Service Co. v. The Wilderness Society, supra, n. 1