Jack DEKRO, et al., Plaintiffs,

v.

STERN BROTHERS & CO., Defendant.

No. 77–0581–CV–W–8.

United States District Court,
W.D. Missouri, W.D.

July 22, 1983.

On Reasonable Attorneys' Fees and
Expenses Aug. 30, 1983.

98

Phil M. Cartmell, Jr., George P. Coughlin, Gage & Tucker, Kansas City, Mo., for plaintiffs.

Robert L. Driscoll, William P. Brandt, Stinson, Mag & Fizzell, Kansas City, Mo., for defendant.

### MEMORANDUM APPROVING CLASS ACTION SETTLEMENT AGREEMENT

STEVENS, District Judge.

On March 8, 1983, the parties entered an Agreement to Settle Class Action Litigation, which was filed with the court. After notice to class members, a hearing on the fairness, adequacy, and reasonableness of the settlement agreement was held on April 15, 1983. At the conclusion of the hearing the court indicated informally that the settlement would be approved, and by order dated July 1, 1983, the court summarily approved the settlement agreement. The purpose of this memorandum is to summarize the rationale for approval of the settlement agreement.

This securities class action was filed August 3, 1977. It arose out of the underwriting, sale, and marketing of certain bonds issued by the following three Colorado water and sewer districts: Woodmoor at Breckenridge Water and Sanitation District, Roxborough Park Metropolitan District, and Morrison Creek Metropolitan Water and Sanitation District. The defendant Stern Brothers & Co., an investment banking firm, acted as an underwriter for the bonds. Plaintiffs, suing on behalf of themselves and all original purchasers of bonds issued by the above districts, claimed that certain actions or inactions of the defendant with regard to the offering circulars and disclosure statements issued and disseminated by Stern Brothers violated section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and rule 10b–5. In addition, the class representatives contended that the actions of defendant constituted common law fraud upon the bond purchasers.

Following lengthy discovery and a hearing on the question of class certification, Judge Collinson, by order of October 29, 1979, certified five separate classes of plaintiffs, comprised of the original purchasers of the five following bond issues:

1. Woodmoor at Breckenridge—August 1, 1971;
2. Roxborough Park—May 1, 1972;
3. Roxborough Park—May 1, 1973;
4. Morrison Creek—November 1, 1972;
5. Morrison Creek—April 1, 1973.

Discovery on the merits consumed the next two years and was generally completed in 1981. Thereafter, defendant moved to decertify the classes and for summary judgment. On May 14, 1982, both motions were denied. *Dekro v. Stern Brothers & Co.*, 540 F.Supp. 406 (W.D.Mo.1982). The case was subsequently set for trial on January 31, 1983, but prior to that date, the court was informed that the parties had agreed to a settlement.

The settlement agreement provides for the establishment of an escrow account in the sum of $3,200,656 entitled "Eligible Bond Purchaser Settlement Fund." Payment to class members making a claim pursuant to the settlement notice is to be made to eligible bond purchasers from this fund according to the following formula. A percentage, established by the settlement agreement, is to be applied to the sum of the par value or face amount of the original bonds purchased by the eligible bond purchaser, less any monies received on principal including noninterest payments received under any district's plan of indebtedness and proceeds received from the sale or tender of the bonds, and, if the bonds were not sold prior to default, a sum representing the unpaid interest on each bond according to its original terms from the date of default through December 31, 1982. If the bonds were sold prior to default, an amount representing interest at the rate of 6% from each bond's respective default through December 31, 1982, is added to the par value figure. The percentage to be applied to the above sum varies depending on the residence and relative sophistication (individual

or institution) of the bond purchaser, as follows:

Non-Colorado individuals—50%;
Non-Colorado institutions—40%;
Colorado individuals—30%;
Colorado institutions—25%.

As part of the settlement agreement defendant agreed to pay the fees and expenses of class counsel separately.

A detailed procedure is set forth in the settlement agreement for the administration and processing of the claims, which need not be repeated here. It suffices to say that the parties have labored diligently on the processing of claims. Magistrate Richard Ralston will hold hearings on August 4 and 5, 1983, to consider and resolve any remaining contested claims.

■ Rule 23(e) requires court approval before a class action can be dismissed or compromised. Acting as a fiduciary for absent class members, the court must determine whether the proposed settlement is fair, reasonable, and adequate. *Grunin v. International House of Pancakes,* 513 F.2d 114, 123 (8th Cir.1975), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). *See also Officers for Justice v. Civil Service Commission,* 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1219, 75 L.Ed.2d 456 (1983). The most important factor to be considered is the strength of the plaintiffs' case balanced against the amount offered in settlement. *Grunin,* 513 F.2d at 124. Other factors to be considered include the following: 1) the expense, complexity, and duration of further litigation; 2) the defendant's financial condition and ability to pay; 3) the opinions of the participants, including class counsel, class representatives, and class members; and 4) the evidence, if any, that the proposed settlement is the product of collusion or fraud. *Id.; Officers,* 688 F.2d at 625. What follows is a review of these factors.

Since the proposed settlement was reached shortly before trial, the record has been fully developed, thus permitting this court to make an informed evaluation of the merits of plaintiffs' case. Moreover, the court became familiar with the strengths and weaknesses of plaintiffs' case in the context of defendant's motions for decertification and for summary judgment. 540 F.Supp. 406. In evaluating plaintiffs' case, the court obviously does not conduct a trial on the merits. *Grunin,* 513 F.2d at 124.

It is obvious from the briefs submitted by the parties in support of the settlement agreement, as well as from the various motions upon which the court has previously ruled, that plaintiffs faced several substantial obstacles in the prosecution of their case. The most troublesome issue was the statute of limitations. There were also issues concerning reliance and waiver, among others. Although the court determined that these issues did not require class decertification or summary judgment as requested by defendant, plaintiffs' ultimate success on the merits was by no means assured. Even if the plaintiff classes had prevailed at the initial trial (*see Order* of September 2, 1982), it is also possible that the claims of many class members could have been defeated at subsequent individual hearings.

■ In their brief, plaintiffs present calculations by their expert which suggest that the present value of the net total unpaid principal obligation under the terms of the original bonds is approximately $4 million. The settlement fund is $3.2 million and class counsel have requested nearly $800,000 in attorneys' fees and expenses. Assuming the settlement fund is exhausted and the requested attorneys' fee is granted, the class members can expect to receive the approximate present value of the outstanding principal obligations. It should also be noted that class members will be permitted to keep the bonds they hold, which should yield some additional future return.

It is apparent to the court that the amount offered in settlement is certainly adequate compensation considering the difficulties plaintiffs would have encountered had this action been prosecuted to the fullest extent possible. This conclusion is reenforced by the fact that further litigation in this action would have been lengthy, complex, and expensive. Although the court by

order of September 2, 1982, established a relatively streamlined framework for trial of this case, it would undoubtedly have been a difficult case to try. The initial trial was expected to last several weeks and, even had plaintiffs prevailed, it was likely that litigation of individual issues would have consumed substantial additional time and money.

The other pertinent factors need only be considered briefly. The ability of defendant to pay $3.2 million in settlement is demonstrated by the fact that such sum has already been deposited in escrow. On the other hand, defendant has no insurance coverage for plaintiffs' claims, and it is uncertain whether defendant could pay a substantially greater judgment at some time in the future, especially if defendant incurred considerable additional expense in the defense of this action.

Counsel for both sides support the settlement agreement without reservation; moreover, no opposition to the settlement from class members has been forthcoming, either at the hearing on April 15, 1983, or otherwise. Counsel arrived at this agreement only after extensive negotiations based on a full knowledge of the facts as developed in discovery. There is not the slightest suggestion that the settlement agreement is tainted by fraud or collusion.

Based on all these factors, the settlement agreement represents an entirely fair, reasonable, and adequate resolution to this litigation. Settlement is the preferred method for the disposition of complex litigation. *Officers,* 688 F.2d at 625. The court commends counsel for their diligent efforts in fashioning a mutually advantageous settlement agreement.

## ON REASONABLE ATTORNEYS' FEES AND EXPENSES

Pursuant to paragraph 12.1 of the Agreement to Settle Class Action Litigation filed

1. By letter dated August 18, 1983, class counsel withdrew their application for twenty-one hours of time valued at $1,155 billed by Phil M. Cartmell, Jr. on January 23, 24, and 25, 1978. The chart has been modified accordingly.

March 8, 1983, and approved July 1, 1983, defendant has agreed to pay class counsel "a reasonable attorneys' fee and an amount sufficient to reimburse class counsel for the reasonable expenses incurred in the prosecution and disposition of this litigation." The amount of this award is to be determined by the court, and such payment is in addition to the fund of $3,200,656 established by defendant for the payment of claims by class members. At the hearing held April 15, 1983, class counsel introduced time records and affidavits in support of their original application. More recently class counsel have filed a supplemental application for fees and expenses incurred during claims processing under the settlement agreement. Taken together, the two applications cover the period from July 18, 1977, when work on the case first began, to August 8, 1983, when Magistrate Ralston entered an order authorizing the escrow agent to pay the approved claims out of the settlement fund.

The following chart prepared by class counsel as part of the supplemental application depicts the various elements of the request for fees and expenses:

### ATTORNEYS' FEES

#### Prosecution Fees

| | |
|---|---|
| Total Lodestar Time (attorney time only to date of settlement) | 3,955.83 hours [1] |
| Value of Lodestar Multiplied by Historical Attorney Rates | $282,603.70 |
| Multiplier of 2 for Risks and Quality | $282,603.70 |
| Total Lodestar Figure: | $565,207.40 |

#### Settlement, Administration and Claims Processing Fees

| | |
|---|---|
| Attorney Time Spent on Settlement, Fee Application and Settlement Administration from November 30, 1982 through March 31, 1983 (348.73 hours) | $ 32,938.36 |

2. The chart as it appears in the supplemental fee application understates this amount by exactly $10,000, apparently due to a mathematical error. The figure shown here represents the correct sum as adjusted according to note 1 *supra.*

Attorney Time Spent on Settlement, Administration, Resolution of Objections and Claims Processing from April 1, 1983 through August 8, 1983 (438.94 hours)                $ 39,840.92

Total:                                           $ 72,779.28

TOTAL ATTORNEYS' FEES:          $637,986.68 [2]

### EXPENSES FOR PROSECUTION AND SETTLEMENT

Legal Assistants and Law Clerks (3,411.28 hours)                     $108,938.37

Disbursements for Expenses (filing costs, long distance telephone charges, depositions, travel, photocopying, Lexis, etc.)              $ 75,595.93

TOTAL EXPENSES:                    $184,534.30

Defendant has made only two objections to the application. First, defendant argues that a doubling of the lodestar fee for risk and quality is unwarranted. Second, defendant opposes the claim for reimbursement of approximately $17,000 paid to four expert witnesses retained by plaintiffs.

### I. *Reasonable Attorneys' Fee*

■ Four factors are to be considered in determining an award of attorneys' fees:

a) the number of hours spent in various legal activities by the individual attorneys;

b) the reasonable hourly rate for the individual attorneys;

c) the contingent nature of success; and

d) the quality of the attorneys' work.

*Merola v. Atlantic Richfield Co.,* 493 F.2d 292, 297 (3rd Cir.1974), *cited with approval in Grunin v. International House of Pancakes,* 513 F.2d 114, 125–28 (8th Cir.1975), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). *See also Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 166–69 (3rd Cir.1973) *(Lindy I); Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 116–18 (3rd Cir.1976) *(Lindy II); Jorstad v. IDS Realty Trust,* 643 F.2d 1305 (8th Cir.1981). "The district court is vested with significant discretion in determining a 'reasonable fee.' "

**3.** Viewed another way, the average hourly rates for the four attorneys who devoted the

*Paschall v. Kansas City Star Co.,* 695 F.2d 322, 337 (8th Cir.1982) (rehearing and rehearing en banc granted Feb. 1, 1983).

### A. Calculation of the Lodestar Figure

■ "The starting point in determining attorneys' fees is to calculate a base or 'lodestar' figure by multiplying a reasonable hourly rate by the number of hours reasonably expended." *Id.* Defendant does not challenge the number of lodestar hours claimed by class counsel, and the court's review of counsel's pro forma billing statement has not revealed any unreasonable or excessive use of time. In addition, defendant does not challenge the hourly rates charged by the various attorneys at Gage & Tucker. Accordingly, the lodestar fee will be calculated as follows:

Attorney Time
July 18, 1977 through November 29, 1982

| Attorney | Range of Rate | Hours | Amount |
|---|---|---|---|
| B.B. Waugh | 30 | 6.33 | $ 190.00 |
| C.W. Struby | 65–83 | 19.91 | 1,334.25 |
| D.E. Egan | 40–55 | 4.67 | 211.67 |
| D.S. Laird | 52 | 14.16 | 736.32 |
| G.P. Coughlin | 40–83 | 1,220.30 | 73,576.72 |
| J.B. Voran | 77 | 14.16 | 1,090.32 |
| J.H. Kreamer | 125–138 | 8.74 | 1,193.12 |
| J.J. Yates | 40–83 | 214.87 | 10,668.88 |
| K.E. Johnson | 70 | 5.75 | 402.50 |
| L.B. Huebner | 45 | 5.99 | 270.00 |
| L.V. Gill | 40–50 | 36.41 | 1,795.84 |
| P.M. Cartmell, Jr. | 55–105 | 2,100.43 | 176,299.60 |
| P.S. Kelly, Jr. | 80–125 | 1.25 | 145.00 |
| R.J. Lauchlan, Jr. | 55 | 9.56 | 525.80 |
| S.B. Sutton | 30 | 27.75 | 832.50 |
| S.W. Hays | 50–57 | 265.55 | 13,331.18 |
| TOTAL | | 3,955.83 | $282,603.70 |

It should be noted that the lodestar has been calculated at historical rates, that is the hourly rate charged by an attorney at the time the services were rendered. For this reason, a range of hourly fees is shown above for several attorneys since during the preparation of this case Gage & Tucker has adjusted the hourly rates for some or all of its attorneys on a roughly annual basis. *Affidavit of Don W. Shanks* at 3.[3]

greatest amount of time to the case through November 29, 1983, are as follows:

Having arrived at a lodestar figure by a relatively objective mathematical calculation, the court is now obliged to consider the more subjective factors of risk and quality. *Jorstad,* 643 F.2d at 1313. Class counsel submit that the circumstances of this case warrant a doubling of the lodestar figure. Defendant disagrees and suggests that no multiplier, or a far smaller multiplier, is warranted.

Defendant relies primarily on *Paschall v. Kansas City Star Co.,* 695 F.2d 322 (8th Cir.1982), an antitrust case in which the Eighth Circuit found an abuse of discretion in the doubling of the lodestar. Although it is true that the opinion cautions against "over-generosity" in the award of attorneys' fees (*id.* at 337), this court finds nothing in the opinion to suggest that the Eighth Circuit has categorically disapproved the use of multipliers for risk and quality. More important are two factual distinctions. First, the lodestar in *Paschall* was calculated on the basis of current rates "even though most of the attorney time was incurred much earlier when actual hourly rates were lower." *Id.* On the other hand and as stated before, the lodestar in this case has been calculated using lower historical rates. Second, those current hourly rates in *Paschall* ($125 and $110 for plaintiffs' lead and senior trial counsel respectively) were "among the highest in the Kansas City area." *Id.* In contrast, the average hourly rate for lead counsel in the instant case was less than $84. *See* note 3 *supra.* Defendant has noted these distinctions and attempted to minimize them, but it is apparent to this court that these were significant factors in the Eighth Circuit's decision. Under the circumstances of the present case, a consideration of the factors of risk and quality is appropriate.

### B. Evaluation of Risks

█ A detailed explanation of the factors to be considered "[u]nder the rubric of 'the contingent nature of success' " is found in *Lindy II:*

1. Analysis of plaintiff's burden. Subsumed in this category are the following considerations: (a) the complexity of the case,—legally and factually; (b) the probability of defendant's liability,—whether it is clear or dubious; whether it has been previously suggested by other civil or criminal proceedings; whether it is asserted under existing case law or statutory interpretation, or is advanced as a novel theory; (c) an evaluation of damages,—whether the claims would be difficult or easy to prove.

2. Risks assumed in developing the case. This category subsumes consideration of: (a) the number of hours of labor risked without guarantee of remuneration; (b) the amount of out-of-pocket expenses advanced for processing motions, taking depositions, etc.; (c) the development of prior expertise in the particular type of litigation; recognizing that counsel sometimes develop, without compensation, special legal skills which may assist the court in efficient conduct of the litigation, or which may aid the court in articulating legal precepts and implementing sound public policy.

3. The delay in receipt of payment for services rendered.

540 F.2d at 117. These factors are to be evaluated as of when the suit was filed. *Id.* "[T]he moving party must bear a heavy burden in proving the entitlement to an increase for risk or quality." *Jorstad,* 643 F.2d at 1314. The fee application by class counsel and the affidavit of lead counsel, Phil M. Cartmell, Jr., attached thereto contain an extensive review of the facts of this case as they relate to the contingent nature of success. The court finds that class counsel have borne the heavy burden necessary to permit an increase based on the risks assumed in the representation of plaintiffs.

| | |
|---|---|
| Phil M. Cartmell, Jr. | $83.94 |
| George P. Coughlin | $60.29 |
| John J. Yates | $49.65 |
| Sarah W. Hays | $50.20 |

Based on this court's knowledge of legal fees regularly charged in the Kansas City area, these hourly rates are undoubtedly reasonable. *See also Affidavit of Frederick Beihl; Affidavit of Darrell L. Havener.*

The court's decision on this issue is based upon the following considerations.

First is the difficult burden assumed by counsel. When class counsel first approached this case, the liability of defendant was problematic at best. In fact, the liability of defendant has remained problematic throughout the preparation of this case for a number of reasons, not the least of which is the statute of limitations. Assuming the two-year Missouri statute of limitations applied to this case and assuming the bankruptcy of the Woodmoor Corporation in early 1974 was sufficient to start the statute running, then by the time this action was filed on August 3, 1977, it was apparently barred. The gravity of this substantial risk was confirmed about two years later when a similar action filed in Colorado was dismissed as untimely. *National Farmers Union Property & Casualty Co. v. Stern Brothers & Co.,* No. 78–F–32 (D.Colo. Aug. 9, 1979). Thus, counsel had to develop a strategy to overcome this obstacle, which they did by arguing that fraudulent concealment by defendant had tolled the statute of limitations. Although this theory sustained the lawsuit, it proved a mixed blessing because of the additional burdens it created.

Plaintiffs also encountered a variety of problems in maintaining this litigation as a class action. Two proposed classes were never certified, and plaintiffs had to meet a voluminous motion for decertification of the other five classes. At the heart of this problem was the issue of class member reliance. Class counsel carefully framed this action as one involving material omissions, thus invoking the presumption of reliance set forth in *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Plaintiffs also advanced a theory of fraud on the market. *See Shores v. Sklar,* 647 F.2d 462 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 772, 74 L.Ed.2d 949 (1983). On the other hand, defendant has contended throughout that this is a case of misrepresentation and that each class member must affirmatively establish reliance. Had defendant's argument prevailed, it is unlikely that a class action would have been maintainable, and as a practical matter, individual litigation would not have been economically feasible.

Among the other obstacles facing class counsel were the issues of scienter and waiver. A reprise of defendant's arguments on these issues is found in *Defendant's Suggestions in Support of the Proposed Settlement Agreement and the Proposed Notice to the Class,* filed March 8, 1983, at 8–9 and 11. Without reviewing these arguments in detail, it suffices to note that scienter was an issue of classwide concern, and waiver might have eventually defeated the individual claims of certain class members. Although it can be argued that securities cases are inherently complex, the court finds that the many legal issues raised by this action were particularly complex and unusual.

Not surprisingly, the case was also factually complex, and counsel assumed numerous risks in developing the evidence. Counsel had no headstart since there had been no prior civil or criminal investigation or prosecution of this matter. The pertinent events had occurred several years prior to 1977, and many of the principal actors had undergone bankruptcy in the interim. The voluminous records were in disarray and required extensive compilation and organization. Counsel conducted sixteen depositions on the issue of class certification and forty-five depositions on the merits. These efforts represented a tremendous outlay of time and money with no guarantee whatsoever that any compensation would be forthcoming. Until the motions for summary judgment and decertification were denied on May 14, 1982, plaintiffs faced the considerable risk that this case might never come to trial, yet by then virtually all merit discovery had been completed.

The final factor to be considered in evaluating the risk assumed by class counsel in taking this case is the delay in the receipt of payment for services rendered. More than six years after this case was filed, class counsel have yet to recover a cent for

their efforts, and the case was more than five years old before class counsel received the assurance of a reasonable fee under the settlement agreement. The unwritten fee agreement reached with the class representatives was that counsel would share in whatever recovery might be had by trial or settlement; if no recovery were had, counsel would receive nothing. Thus, from the outset counsel assumed a significant risk of nonpayment. To award a fee based only on the historical hourly rates as suggested by defendant would be grossly unfair and would destroy any incentive for a law firm to take a case such as this, particularly when that firm has an established and lucrative clientele. Gage & Tucker is a busy major law firm in this city—precisely the type of firm necessary to handle protracted and difficult litigation. With no promise of a premium for risks assumed, complex and arguably meritorious cases will go unprosecuted, and only those few who can afford the extraordinary costs of such litigation will ever obtain redress.

For the truly extraordinary risks assumed by class counsel in the prosecution of this matter, an additional sum equal to seventy-five percent of the lodestar is fully justified.

### C. Evaluation of Quality

The final factor to be considered is the quality of the services rendered by class counsel. As explained in *Lindy II,* the hourly rates used in calculating the lodestar figure are at least some general indication of quality: "counsel who possess or who are reputed to possess more experience, knowledge and legal talent generally command hourly rates superior to those who are less endowed." 540 F.2d at 117. Thus, an adjustment in the lodestar for quality—either upward or downward—should be made only in unusual or exceptional circumstances. *Id.* at 118. Class counsel, as the party seeking an upward adjustment for quality, bear the "heavy burden" to show such a premium is warranted. *Jorstad,* 643 F.2d at 1314.

As was the case with the risk factor, *Lindy II* once again provides a detailed explanation of the factors to be considered in assessing the quality of legal services rendered:

1. The result obtained by verdict or settlement, evaluated in terms of (a) the potential money damages available to the class member, *i.e.,* a comparison of the extent of possible recovery with the amount of actual verdict or settlement; (b) the benefit—monetary or non-monetary—conferred on the class, *i.e.,* permitting the court "to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested . . . ." [Citation omitted.]

2. An evaluation of the professional methods utilized in processing the case,—rewarding the use of efficient methods to expedite the case and penalizing the use of methods the predominant purpose of which was to delay or obstruct the proceedings.

540 F.2d at 118. The fee application by class counsel and the affidavit submitted in support thereof review the pertinent facts. The court finds that class counsel have borne the heavy burden necessary to permit a modest increase based on the superior quality of services rendered to plaintiffs. The court's decision on this issue is based upon the following considerations.

The result obtained by settlement is very favorable to the plaintiff classes. Even defendant labels it "very generous to plaintiffs." *Defendant's Suggestions in Support of the Proposed Settlement Agreement and the Proposed Notice to the Class* at 3. Class members were allowed to file claims against a $3.2 million settlement fund which does not have to be shared with counsel. As discussed in the *Memorandum Approving Class Action Settlement Agreement,* filed July 22, 1983, the present value of the net total unpaid principal obligation under the terms of the original bonds is approximately equal to the combined total of the settlement fund and the fees and expenses requested by counsel. Although this calculation does not reflect approximately $3.6 million in unpaid interest, under the terms of the settlement agreement

class members are allowed to keep any bonds they still hold, which should ultimately yield additional returns on their ill-fated investments. Considering the substantial risks that might have ultimately precluded any recovery by plaintiffs (as discussed in the previous section), the court finds the settlement is indeed generous.[4]

The court also finds that the magnitude of the settlement is in large part attributable to the efforts of class counsel, who by diligent and imaginative efforts were able to withstand repeated assaults by the defense, particularly the motions for summary judgment and decertification. A resourceful and intrepid adversary is certainly a powerful incentive for settlement.

An evaluation of the professional methods utilized in processing the case reveals that class counsel prosecuted the case in an economical and efficient manner. Obviously, the risk that counsel might recover nothing served as an incentive to limit expenditures of time and money consistent with vigorous prosecution. In his affidavit, Phil Cartmell states that only one attorney from Gage & Tucker attended most depositions; moreover, paralegals were utilized whenever possible. The use of paralegals is significant because their time is less costly and, since it is not included in the lodestar, it is not subject to any upward adjustment. In addition, remuneration for paralegal time is sought only at historical rates. The cost-cutting measures utilized by class counsel merit an award in addition to the lodestar since the very effect of these measures was to reduce the lodestar. In other words, this is an example of quality services not otherwise compensated by the basic lodestar amount. *Cf. Lindy II,* 540 F.2d at 117 (discussing the fact that some considerations of quality are inherent in calculation of the lodestar).

Based on the highly favorable results obtained and the efficient and effective methods employed by class counsel, the court has concluded that an additional award representing twenty-five percent of the lodestar is appropriate.

## II. Post-Settlement Attorneys' Fees

■ Attorney time spent on the case after settlement on November 29, 1982, is not included in the lodestar calculation and is not subject to adjustments for risk or quality. *See Jorstad,* 643 F.2d at 1314–15. The pro forma billing statement submitted in support of the original application shows time accrued from July 18, 1977, through March 31, 1983. Of this, 348.73 hours were spent by attorneys on post-settlement matters, for which a total fee of $32,938.36 is requested, as depicted by the following chart:

November 30, 1982 through March 31, 1983

| Attorneys | Rate | Hours | Amount |
|---|---|---|---|
| P.M. Cartmell | 105–110 | 152.74 | $16,596.40 |
| P.S. Kelly | 138 | .50 | 69.00 |
| G.P. Coughlin | 83–88 | 102.21 | 8,731.43 |
| J.H. Kreamer | 135–138 | 16.88 | 2,305.74 |
| J.J. Yates | 83–88 | 11.98 | 1,045.54 |
| S.W. Hays | 57–70 | 63.67 | 4,128.00 |
| C.W. Struby | 83 | .75 | 62.25 |
| TOTALS | | 348.73 | $32,938.36 |

Defendant makes no challenge to this request; moreover, the court has reviewed the supporting documents and finds the request reasonable. Accordingly, it will be granted.

At the time of the original application, class counsel applied for an award of estimated future fees and expenses. The passage of time and the filing of the supplemental fee application have rendered that request moot. Instead, class counsel have now provided the court with a pro forma billing statement covering the remainder of the settlement processing period (from April 1, 1983 to August 8, 1983). The fol-

---

4. It is interesting to note that the claims paid out of the settlement fund totaled slightly less than three million dollars. *See Order Approving and Adjudicating All Settlement Claims and Directing Settlement Payments,* filed August 8, 1983. Thus, the amount offered in settlement exceeded the amount of claims payable under the settlement agreement by more than $200,-000. This development reinforces the court's conclusion that the settlement is generous to plaintiffs.

lowing chart summarizes the supplemental request for attorneys' fees:

April 1, 1983 through August 8, 1983

| Attorneys | Rate | Hours | Amount |
|---|---|---|---|
| J.J. Yates | 88 | 5.65 | $ 497.20 |
| S.W. Hays | 70 | 91.09 | 6,376.30 |
| P.M. Cartmell | 110 | 129.06 | 14,196.60 |
| G.P. Coughlin | 88 | 172.99 | 15,223.12 |
| T.M. Higgins | 110 | 3.25 | 357.50 |
| R.J. Lauchlan | 65 | 1.74 | 113.10 |
| J.H. Kreamer | 135 | 4.66 | 629.10 |
| L.M. Gates | 88 | 1.00 | 88.00 |
| B.B. Waugh | 80 | 29.50 | 2,360.00 |
| TOTALS | | 438.94 | $39,840.92 |

The amount shown here is almost five times greater than the amount estimated for future attorneys' fees in the original application ($8,000). The simple explanation for this is that the resolution of disputed claims was more protracted than expected. Approximately ninety, or almost one-third of the claims were subject to some dispute. Of these, about thirty objections were resolved after the claimants provided additional documentation. Another thirty-five claims were compromised on the basis of defendant's objections and five were disallowed entirely. The remainder of the objections were apparently resolved in favor of the claimants.

Neither side is willing to take responsibility for the protracted processing of claims, and the court finds it unnecessary to allocate such responsibility since class counsel's supplemental application is unopposed by defendant. After a review of the supplemental application for post-settlement attorneys' fees, the court is convinced that the hours incurred and the hourly rates charged are reasonable; accordingly, the request will be granted.

## III. Expenses

■ The sole dispute with respect to the expenses requested is whether defendant should be required to pay the fees of four expert witnesses retained by plaintiffs, as follows:

| | |
|---|---|
| John E. Peterson | $ 4,124.00 |
| Robert Page | 4,385.00 |
| Frederick Kirby | 8,201.15 |
| George Kaufmann | $ 400.00 |
| TOTAL | $17,110.15 |

These men possess expertise in economics, accounting, and municipal finance.

The Eighth Circuit has recognized that, with increasing frequency, "federal courts have suggested that the prevailing party may recover expert witness fees when the expert's testimony was crucial to the resolution of the case." *Paschall,* 695 F.2d at 338. The question before this court is whether the services of these experts were crucial to plaintiffs' case.

Defendant suggests the experts were not crucial because they did not testify, their names first surfaced in the case a few months before settlement, and they did not influence the decision to settle the case. The court finds these arguments unpersuasive. First, defendant has cited no case which requires that an expert actually testify before his fee is recoverable by a prevailing party. *Paschall* phrases the test as "crucial to the *resolution* of the case" (*id.*), and settlement is one way by which a case may be resolved. Second, the timing of the experts' involvement in this case is no reason to deny reimbursement for their fees. The motions for decertification and summary judgment were denied only about six months before settlement was announced. With its ruling on those motions, the court brought the case out of a long period of dormancy, and trial preparation began in earnest. Class counsel certainly cannot be faulted for waiting to see if the case would survive those two motions before retaining experts for trial. Third, defendant's argument that the experts did not influence the settlement is too narrowly focused. Cases are settled for many specific reasons, but as a general proposition, settlements come about because the risk and expense of further litigation becomes unacceptable. Although defendant has not specified why it chose to settle this matter, no doubt one factor was plaintiffs' ability to vigorously prosecute the case by all available means, including expert witnesses.

From what has already been stated, it should be apparent that the court finds the

four experts retained by plaintiffs were crucial to the resolution of the case. The circumstances surrounding the employment of each expert are set forth in the *Supplemental Affidavit of Phil M. Cartmell, Jr.* Stated generally, plaintiffs were prepared to respond in kind to experts retained by defendant. It is inconceivable that a securities case as complex as this would be litigated without economists, accountants, and other experts on both sides. Accordingly, defendant will be required to pay the fees of plaintiffs' experts as specified above.[5]

Defendant does not challenge the remainder of the expenses, which include fees for paralegals and law clerks, as well as a variety of miscellaneous but not insubstantial expenditures for filing fees, depositions, long distance telephone calls, photocopies, and travel. A review of the pro forma billing statement reveals no unreasonable expenses; therefore, the request will be granted.

### IV. Conclusion

For the reasons stated, it is

ORDERED that the fee applications by class counsel are granted, as follows:

Attorneys' Fees:

| | |
|---|---|
| Lodestar | $282,603.70 |
| Multiplier of .75 for Risk | 211,952.78 |
| Multiplier of .25 for Quality | 70,650.92 |
| Total Lodestar | $565,207.40 |
| Post-Settlement Attorneys' Fees | 72,779.28 |
| Total Attorneys' Fees | $637,986.68 |

Expenses:

| | |
|---|---|
| Legal Assistants and Law Clerks | $108,938.37 |
| Disbursements for Expenses of Prosecution and Settlement | 75,595.93 |
| Total Expenses | $184,534.30 |
| GRAND TOTAL | $822,520.98 |

---

5. As an alternative basis for this award, the court relies on the contractual language of the settlement agreement. Paragraph 12.1 provides for the payment of "reasonable expenses incurred in the prosecution and disposition of this litigation." For the reasons previously discussed, the decision to retain experts was reasonable, as were the costs incurred.

It is further

ORDERED that pursuant to paragraph 12.1 of the settlement agreement, defendant shall pay to class counsel the above sums totaling $822,520.98 within seven days.

It should also be noted that defendant makes no alternative challenge to the specific amounts charged by each expert. Accordingly, the court has not addressed that issue; nevertheless, a review of the invoices submitted by each expert shows the hours expended and the rates charged were reasonable.